# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

```
-------------------------------------------------- X
COMMODITY FUTURES TRADING                  :
COMMISSION,                                :      Case No.:  AU:20-CV-00908-RP
                                           :
                Plaintiff,                 :
                                           :
        v.                                 :
                                           :
DAVID CARTU, JONTHAN CARTU, JOSHUA         :
CARTU, RYAN MASTEN, LEEAVE PERETZ,         :
NATI PERETZ, ALL OUT MARKETING            :
LIMITED, BAREIT MEDIA LLC d/b/a            :
SIGNALPUSH, BLUE MOON INVESTMENTS          :
LTD., and ORLANDO UNION, INC.,             :
                                           :
                Defendants.                :
                                           :
-------------------------------------------------- X
```

## DEFENDANT JOSHUA CARTU'S MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ............................................................................................... 2

ARGUMENT .................................................................................................... 3

    I.      THE COURT LACKS PERSONAL JURISDICTION OVER JOSH ................... 3

    II.     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST JOSH ................ 4

        A.    The Complaint Fails to Satisfy the Requirements of Rules 8 and 9(b) ........................................................................................................... 4

        B.    The Complaint Fails to State a Claim Upon Which Relief Can Be Granted ..................................................................................................... 5

            1.    The CEA Does Not Apply Extraterritorially ................................ 5

                a.    The CFTC has not alleged sufficient U.S.-focused activities to state a claim for violation of the CEA ............ 6

                    (i)    The CFTC has failed to plead any U.S.-focused activity for the claims brought under Sections 4c(b) and 6(c)(1) of the CEA ................. 7

                    (ii)    The Complaint contains no particularized allegations of U.S.-focused activity by Josh .......... 7

            2.    The Complaint Does Not Adequately Plead the Elements of Counts 1, 2, and 4 Against Josh .................................................... 9

                a.    As to Count 1, the CFTC has not adequately pleaded that the binary options alleged here satisfy the definition of an option necessary to trigger application of the CEA ...................................................... 9

                b.    Count 2 should be dismissed because the CFTC has not sufficiently alleged that the binary options alleged here constitute swaps .......................................... 10

                c.    The CFTC has not adequately alleged the elements of Count 4 ...................................................................... 11

            3.    The Complaint Does Not Adequately Allege That Josh Is a Control Person or That He Should Be Held Jointly and Severally Liable ....................................................................... 11

                a.    The CFTC has not alleged that Josh controlled an entity alleged to be principally liable ............................... 12

                b.    The CFTC has not adequately alleged that Josh lacked good faith ............................................................ 12

c.     The CFTC has not adequately alleged that Josh knowingly induced the acts at issue ................................. 13

III.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE VENUE IS IMPROPER AS TO JOSH .................................................................................... 15

IV.    THE CFTC'S ATTEMPTED SERVICE OF PROCESS ON JOSH WAS INSUFFICIENT AND WARRANTS DISMISSAL ......................................... 17

V.    THE RELIEF REQUESTED IN THE FORMS OF DISGORGEMENT AND RESTITUTION SHOULD BE DISMISSED ........................................... 22

    A.    Disgorgement and Restitution In Connection With Alleged Violations Prior to September 2, 2015 Are Time Barred ....................... 22

    B.    Disgorgement and Restitution In Connection With Alleged Violations After September 2, 2015 Should be Limited to Amounts Authorized by the CEA ............................................................................ 24

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adhikari v. Kellogg Brown & Root, Inc.*,
845 F.3d 184 (5th Cir. 2017) ............................................................................5, 6

*Akurate Dynamics, LLC v. Carlisle Fluid Techs., Inc.*,
No. 6:20-cv-00606, 2021 WL 860006 (W.D. Tex. Mar. 8, 2021)...........................15

*Ashcroft v. Iqbal*,
556 U.S. 663 (2009)......................................................................................4, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................4

*Buholtz v. Sogamoso*,
No. 4:19-cv-00245, 2020 WL 9936209 (E.D. Tex. Mar. 16, 2020) .......................17

*CFTC v. Allied Mkts. LLC*,
371 F. Supp. 3d 1035 (M.D. Fla. 2019) ...............................................................12

*CFTC v. Fingerhut*,
No. 1:20-cv-21887, 2021 WL 65069 (S.D. Fla. Jan. 7, 2021)................................10

*CFTC v. Garofalo*,
No. 10 C 2417, 2010 WL 11245430 (N.D. Ill. Dec. 21, 2010) .......................5, 6, 7

*CFTC v. Gramalegui*,
No. 15-cv-02313, 2018 WL 4610953 (D. Colo. Sept. 26, 2018)...............22, 23, 24

*CFTC v. Hunter Wise Commodities, LLC*,
1 F. Supp. 3d 1311 (S.D. Fla. 2014) ......................................................11, 12, 13

*CFTC v. Johnson*,
408 F. Supp. 2d 259 (S.D. Tex. 2005) .............................................................13, 14

*CFTC v. Kratville*,
796 F.3d 873 (8th Cir. 2015) .............................................................................12

*CFTC v. Lake Shore Asset Mgmt. Ltd.*,
496 F.3d 769 (7th Cir. 2007) .............................................................................25

*CFTC v. M25 Invs. Inc.*,
No. 3:09-cv-1831, 2010 WL 769367 (N.D. Tex. Mar. 6, 2010)................................8

i

*CFTC v. McDonnell*,
    332 F. Supp. 3d 641 (E.D.N.Y. 2018) ...............................................................11

*CFTC v. R.J. Fitzgerald & Co.*,
    310 F.3d 1321 (11th Cir. 2002) .........................................................................13

*CFTC v. Savage*,
    611 F.2d 270 (9th Cir. 1979) .............................................................................17

*CFTC v. Total Call Grp., Inc.*,
    No. 4:10-cv-00513, 2012 WL 1642196 (E.D. Tex. Mar. 30, 2012) .......................13

*CFTC v. US Coin Bullion LLC*,
    No. 6:20-cv-40, 2021 WL 4935728 (M.D. Fla. July 13, 2021) .............................14

*CFTC v. Worldwide Commodity Corp.*,
    366 F. Supp. 2d 276 (E.D. Pa. 2005) .................................................................17

*Gilmour ex rel. Grantor Trusts v. Blue Cross & Blue Shield of Alabama*,
    No. SA-17-ca-518, 2019 WL 2147580 (W.D. Tex. Mar. 6, 2019).........................15

*Guajardo v. State Bar of Texas*,
    803 F. App'x 750 (5th Cir. 2020) .......................................................................15

*Head v. Las Vegas Sands, LLC*,
    760 F. App'x 281 (5th Cir. 2019) ..........................................................................8

*Hilbun v. Goldberg*,
    823 F.2d 881 (5th Cir. 1987) .............................................................................18

*Jensen v. Rollinger*,
    2015 WL 13796692 (W.D. Tex. Dec. 11, 2015) .............................................17, 19

*Jensen v. Rollinger*,
    2015 WL 13796693 (W.D. Tex. Feb. 26, 2015).....................................................18

*Kokesh v. SEC*,
    137 S. Ct. 1635 (2017)...................................................................................22, 23

*Lambert v. U.S.*,
    44 F.3d 296 (5th Cir. 1995) ...............................................................................18

*Liu v. SEC*,
    140 S. Ct. 1936 (2020).......................................................................................24

*Lozano v. Bosdet*,
    693 F.3d 485 (5th Cir. 2012) .............................................................................17

ii

*LULAC v. State*,
No. 5:15-CV-00219, 2015 WL 3464082 (W.D. Tex. May 29, 2015) ....................................4

*Martone v. Robb*,
No. 1:15-CV-877, 2017 WL 3326966 (W.D. Tex. Aug. 2, 2017)............................................4

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010)..................................................................................................................5, 6

*Prime Int'l Trading, Ltd. v. BP P.L.C.*,
937 F.3d 94 (2d Cir. 2019)......................................................................................................6, 7

*Real Est. Training Int'l, LLC v. Nick Vertucci Cos.*,
No. 8:14-cv-00546, 2014 WL 1383897 (W.D. Tex. Apr. 8, 2014) ......................................15

*Redi-Mix Sols., Ltd. v. Express Chipping, Inc.*,
No. 6:16-cv-298, 2017 WL 3671377 (E.D. Tex. Feb. 9, 2017)........................................8, 15

*Southampton, Ltd. v. Le Norman*,
No. 3:18-cv-1089, 2019 WL 7902959 (N.D. Tex. Sept. 3, 2019) .........................................15

*Tesoro Refin. & Mktg. Co. v. C.A.R. Enters., Inc.*,
No. SA-18-cv-820, 2018 WL 6050603 (W.D. Tex. Nov. 19, 2018) ....................................16

*U.S. Commodity Futures Exch. Comm'n v. Vision Fin. Partners, LLC*,
190 F. Supp. 3d 1126 (S.D. Fla. 2016) ...................................................................................9

*U.S. v. Coleman*,
609 F.3d 699 (5th Cir. 2010) ...................................................................................................9

*Veliz v. Rimax Contractors, Inc.*,
No. 15-cv-6339, 2016 WL 1704496 (E.D. La. Apr. 28, 2016)............................................17

*Water Splash, Inc. v. Menon*,
137 S. Ct. 1504 (2017)............................................................................................................20

**Statutes**

7 U.S.C. § 1a..................................................................................................................9, 10

7 U.S.C. § 6c(b) .......................................................................................................5, 6, 11

7 U.S.C. § 9(1) .......................................................................................................................6

7 U.S.C. § 13a-1...............................................................................................15, 24, 25

7 U.S.C. § 13c(b) ...............................................................................................................11

28 U.S.C. § 2462................................................................................................................22

**Other Authorities**

17 C.F.R. § 32.2 ..................................................................................................6, 11

17 C.F.R. § 32.4 .......................................................................................................6

17 C.F.R. § 180.1(a) .................................................................................................6

Dutch Govt. Treaty Database: Convention on the Service Abroad of Judicial and
    Extrajudicial Documents in Civil or Commercial Matters: Parties With
    Reservations, Declarations and Objections, (entry for Hungary) .....................19–20

The Hague Conference on Private International Law: Hungary – Central
    Authority & Practical Information ...............................................................19

Fed. R. Civ. P. 4 ...........................................................................................17, 19, 21

Fed. R. Civ. P. 8 ..............................................................................................4, 5, 8

Fed. R. Civ. P. 9(b) ........................................................................................1, 4, 5

Fed. R. Civ. P. 12(b) ...................................................................................... *passim*

Tex. R. Civ. P. 106 ..................................................................................................19

Defendant Joshua Cartu ("Josh") respectfully moves to dismiss Plaintiff Commodity Futures Trading Commission's ("CFTC's") Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6).

## PRELIMINARY STATEMENT

The Complaint alleges that Josh, in concert with his brothers and others, engaged in a years-long fraudulent scheme to offer and sell binary options in violation of the Commodity Exchange Act ("CEA") and without registering with the CFTC. In its Complaint, the CFTC admits that Josh is a foreign citizen who resides outside the U.S. and fails to specify any alleged contact that Josh had with or targeted toward the U.S., such that there could be any basis for this Court to exert jurisdiction over him. Moreover, for as many times as it repeats his family name, the Complaint lacks any particularized allegations about what Josh purportedly said, wrote, saw, heard or otherwise did in furtherance of the alleged fraudulent binary options scheme. It also fails to identify even a single U.S. customer who was allegedly defrauded or a single domestic "option" or "swap" transaction that allegedly violated the CEA.

Instead, the CFTC attempts to sidestep well-established pleading requirements and lumps together David, Jonathan and Josh Cartu as the "Cartu Brothers" and then alleges in sweeping, generalized fashion that, together with three other individual defendants and various corporate defendants, they offered illegal binary options transactions through what the CFTC dubs the "Cartu Brands," which allegedly were executed through an internet-based trading platform the CFTC dubs the "Cartu Platform." (Compl. ("¶") ¶¶ 1–2, 5.) The result is a threadbare Complaint that should be dismissed for failure to comply with Rules 12(b)(2), 9(b) and 12(b)(6), as well as under Rule 12(b)(3) because venue is improper and Rule 12(b)(5) because the CFTC's attempted service on Josh was untimely. Moreover, the claims for disgorgement and restitution should be dismissed to the extent they are time-barred and exceed the CFTC's statutory authority.

1

# BACKGROUND

Josh joins in and incorporates by reference the legal arguments and arguments regarding the CFTC's pleading failures set forth in the motions to dismiss being filed by his brothers, Jonathan and David Cartu. To supplement their recitation of the alleged facts in the Complaint and procedural background, Josh notes that, aside from the CFTC's attempt to include him in the generic group allegations against what the CFTC dubs the "Cartu Brothers" concerning what the CFTC dubs the "Cartu Brands" and the "Cartu Platform," the only *specific* allegations in the Complaint against Josh can be summarized in five bullet points:

- He is allegedly a Canadian citizen who is believed to reside in Budapest, Hungary and has never been registered with the CFTC (¶ 18);

- He allegedly owned and controlled Orlando Union Inc. ("Orlando Union"), a company that was incorporated in Belize and has never been registered with the CFTC, and which Josh allegedly "used" to "operate" the "Cartu Platform" by "opening [unidentified] accounts and/or entering into [unidentified] agreements" on unspecified dates with unspecified counterparties (¶¶ 5, 25);

- He allegedly shared in the revenues of the "Cartu Platform" through transfers from an Irish payment processing company, Greymountain Management Limited ("Greymountain"), to non-U.S. accounts allegedly held by Orlando Union (*see, e.g.*, ¶¶ 6, 7, 84);

- He allegedly invested in and was a "partial owner" of Greymountain and its "subsidiary or successor entity[,]" Mega Optimization Limited, although the CFTC alleges that the two companies are wholly owned by his brother David (and thus, not partially owned by Josh) (¶¶ 27–28); and

- One of the alleged binary options brands, BeeOptions, allegedly began its operations in 2013 in "a conference room in the offices of an Israeli-based gaming company owned by Josh and David" (though the Complaint does not specify whether Josh was even aware of this alleged use of the conference room). (¶ 62).

There is no allegation that Josh participated in any operational meetings or had discussions with the other defendants or with the brokers who allegedly helped effectuate the purported scheme, nor that Josh ever sent or received any written communications about it. Indeed, there is no allegation that Josh had any particular role, formal or informal, in the operation of the alleged binary options business, let alone that he personally made or authorized any misrepresentations about it to investors, whether located in the U.S. or abroad. To the contrary, Josh is not even mentioned in the Complaint's few specific allegations of misrepresentations or use of manipulative or deceptive devices (*see, e.g.*, ¶¶ 76, 79 (re Jonathan Cartu and/or the Peretz Brothers)). Moreover, there is no allegation that Josh ever entered the U.S., communicated with anyone in the U.S., solicited business in the U.S., or otherwise had any contact with the U.S., whether in connection the alleged binary options business or more generally.

## ARGUMENT

## I. THE COURT LACKS PERSONAL JURISDICTION OVER JOSH

Josh joins in and incorporates by reference the legal arguments and pleading failures regarding personal jurisdiction set forth in the motions to dismiss filed by David and Jonathan Cartu. Like the allegations against each of them, the Complaint concedes that Josh is a foreign citizen located outside the U.S., and fails to allege that he had any contact—let alone sufficient minimum contacts—with this forum, or that he purposefully availed himself of this forum. Moreover, as set forth in his brothers' motions, alleged conduct by any co-defendant, company or unidentified "agent" thereof cannot be imputed on Josh for the purposes of attempting to establish

personal jurisdiction, nor can the alleged operation of various websites by others give rise to personal jurisdiction over him. Because the CFTC has not satisfied its burden of establishing general or specific jurisdiction over Josh, the Court should dismiss the Complaint as to him under Rule 12(b)(2).

## II.     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST JOSH

A complaint that fails to provide "enough facts to state a claim that is plausible on its face" should be dismissed for failure to state a claim under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 663 (2009) ("the pleaded factual content [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). "[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *LULAC v. State*, No. 5:15-CV-00219, 2015 WL 3464082, at *1 (W.D. Tex. May 29, 2015) (Pitman, J.). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Martone v. Robb*, No. 1:15-CV-877, 2017 WL 3326966, at *2 (W.D. Tex. Aug. 2, 2017) (Pitman, J.), *aff'd*, 902 F.3d 519 (5th Cir. 2018). The Complaint should be dismissed for failure to satisfy the requirements of Rules 8 and 9(b) (*see infra* § II.A) and for failure to state a claim upon which relief can be sought under Rule 12(b)(6) (*see infra* § II.B).

### A.     The Complaint Fails to Satisfy the Requirements of Rules 8 and 9(b)

Josh joins in and incorporates by reference David and Jonathan Cartu's arguments that the Complaint fails to satisfy the requirements of Rules 8 and 9(b). Just as is the case with respect to David, the Complaint does not articulate what role, if any, Josh allegedly played in the supposed misrepresentations, and instead relies on generic group allegations without identifying who is supposedly responsible for which alleged acts. Thus, the Complaint fails to provide sufficient

notice to Josh to satisfy Rule 8 or the requisite degree of particularity to satisfy 9(b). The Complaint should thus be dismissed as to Josh.

## B. The Complaint Fails to State a Claim Upon Which Relief Can Be Granted

### 1. The CEA Does Not Apply Extraterritorially

The CEA does not apply extraterritorially. It is a "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (internal quotations and citation omitted); *see also Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 192 (5th Cir. 2017). "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison*, 561 U.S. at 255. The CEA has no clear indication of extraterritorial application. *See CFTC v. Garofalo*, No. 10 C 2417, 2010 WL 11245430, at *5 (N.D. Ill. Dec. 21, 2010) (citing *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 730 F.2d 1103, 1107 (7th Cir. 1984)) (noting that the *Tamari* court "concluded in a thorough analysis that neither the CEA nor its legislative history specifically authorizes extraterritorial application of the statute").

Even if there were some authorization somewhere within the CEA (there is not), the specific provisions of the CEA at issue in this case—Sections 4c(b) and 6(c)(1)—lack "a clear statement of extraterritorial effect," a clear statement that is required by *Morrison* in order to give those provisions extraterritorial effect. *Morrison*, 561 U.S. at 265. For instance, Section 4c(b) prohibits individuals from "offering to enter into, enter into or confirm the execution of, any transaction involving any commodity regulated under this chapter which is . . . or is commonly known to the trade as, an 'option' . . . contrary to any rule, regulation, or order of the Commission prohibiting any such transaction . . . ." 7 U.S.C. § 6c(b). Neither that section nor Regulations 32.2 and 32.4, which Josh has been charged with violating, contain any clear statement of

extraterritorial effect.  *See Garofalo*, 2010 WL 11245430, at *5;[1] *see also* 7 U.S.C. § 6c(b); 17 C.F.R. §§ 32.2, 32.4.

The same is true of Section 6(c)(1) and Regulation 180.1(a).  In particular, Section 6(c)(1) proscribes "us[ing] or employ[ing], . . . in connection with any swap, . . . any manipulative or deceptive device."  7 U.S.C. § 9(1); *see also* 17 C.F.R. §§ 180.1(a)(1)–(3).  Thus, Section 6(c)(1) and Regulation 180.1(a) facially lack clear statements of extraterritorial effect.  *See Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94, 103 (2d Cir. 2019) (finding that Section 6(c)(1) lacks a clear statement of extraterritorial effect).  Therefore, because the CEA and particularly Sections 4c(b) and 6(c)(1), along with the regulations Josh is alleged to have violated, are silent, the provisions upon which the CFTC relies in this case "have no extraterritorial application."  *See Garofalo*, 2010 WL 11245430, at *5.

a.  *The CFTC has not alleged sufficient U.S.-focused activities to state a claim for violation of the CEA*

A claim for violating a statute with no clear indication of extraterritorial application may survive if it properly states a domestic application of the statute. *Morrison*, 561 U.S. at 266.  However, in this case, the CFTC has failed to allege sufficient domestic activities to state a claim.  In order to make this determination, courts evaluate whether the domestic activity pleaded is the "focus" of the statute.  *Id.*; *see also Adhikari*, 845 F.3d at 193; *Prime Int'l Trading*, 937 F.3d at 102.  The CFTC has failed to allege any specific U.S.-focused activity by any defendant, let alone allege any U.S.-focused activity by Josh.

---

[1]   Because of the unique procedural history of the *Garofalo* case, the district court did not ultimately rule on whether to adopt the magistrate's report and recommendation.

       (i)      <u>The CFTC has failed to plead any U.S.-focused activity for the claims brought under Sections 4c(b) and 6(c)(1) of the CEA</u>

Section 4c(b) is "concerned with where the underlying options contracts were actually traded[.]" *Garofalo*, 2010 WL 11245430, at *6. Aside from vague allegations about unspecified "customers in the United States" (*see* ¶ 53), the CFTC failed to allege any specific domestic activity, including whether the underlying binary options were allegedly traded from within the U.S. *Compare with, Garofalo*, 2010 WL 11245430, at *6 (noting CEA did apply to the conduct at issue where CFTC pled that: defendant's personal account traded at the Chicago Mercantile Exchange ("CME"), co-defendant had an account at the CME, underlying options were traded on the CME, and declarations of CME investigators confirmed allegations that defendant had such personal account and that co-defendant's account was used to execute trades in Chicago).

In *Prime Int'l Trading*, the court found that, because Section 6(c)(1) focuses on manipulation in commodities markets, plaintiffs failed to plead a proper domestic application of Section 6(c)(1) where the relevant conduct occurred exclusively abroad. 937 F.3d at 107–08. Again, the Complaint in this case is woefully lacking: there are no allegations about specific domestic manipulation of commodities markets.

       (ii)     <u>The Complaint contains no particularized allegations of U.S.-focused activity by Josh</u>

Any other allegations in the Complaint concerning domestic activity lack particularized or specific connections to Josh, and thus fail the "focus" analysis prong of *Morrison*. Instead, the Complaint improperly uses groups to allege U.S.-focused activities, such as by referring to the "Defendants," the "Cartu Brothers," or various entities as what the CFTC dubs "Cartu Brands" or the "Cartu Platform," and even goes so far as to lump together individuals allegedly located in the U.S. "*and elsewhere*" as "customers." (*See, e.g.*, ¶¶ 3, 5, 6, 52, 75, 92, 93 (emphasis added).) In other analogous contexts where a plaintiff's allegations are also subject to specificity requirements,

courts have rejected group-pled allegations. *See Head v. Las Vegas Sands, LLC*, 760 F. App'x 281, 282-83 (5th Cir. 2019) (rejecting group pleading for personal jurisdiction); *Redi-Mix Sols., Ltd. v. Express Chipping, Inc.*, No. 6:16-cv-298, 2017 WL 3671377, at *8 (E.D. Tex. Feb. 9, 2017) (requiring individualized allegations for venue); *CFTC v. M25 Invs. Inc.*, No. 3:09-cv-1831, 2010 WL 769367, at *3 (N.D. Tex. Mar. 6, 2010) (finding that CFTC "used improper group pleading that fail[ed] to adequately connect the who and the what" and rejecting general group pleading for scienter); *see also Ashcroft*, 556 U.S. at 678, 687 ("naked assertions" and "general allegation[s]" are insufficient to meet requirements of Rule 8). The CFTC's extensive use of group pleading is patently improper for the purposes of attempting to properly plead U.S.-focused activities under *Morrison*.

The specific allegations against Josh—to the extent there are any at all—are limited to conduct that occurred abroad, including for example: (1) he allegedly owned and controlled a company incorporated in Belize, and (2) BeeOptions, which he is not alleged to have owned or run, allegedly operated for a time out of a conference room in the office of an Israeli-based gaming company he allegedly co-owned. *See* ¶¶ 25, 62; *see also supra* Background (listing the very limited specific allegations against Josh). None of these allegations implicate, let alone sufficiently plead, U.S.-focused activity *by Josh*. For these reasons, the CEA provisions charged here do not apply extraterritorially, and the CFTC has failed to state a claim against Josh under the CEA.

## 2. The Complaint Does Not Adequately Plead the Elements of Counts 1, 2, and 4 Against Josh

Keeping in theme with its barebones Complaint, the CFTC has not sufficiently pleaded the elements of Counts 1, 2, and 4 against Josh,[2] and therefore this Court should dismiss the Complaint as to him. Indeed, given that the Complaint is devoid of the specifics of any transaction alleged to violate the CEA, the Complaint fails to state a claim that the vague, generally described and unspecific alleged transactions fall within the ambit of the CEA.

### a. As to Count 1, the CFTC has not adequately pleaded that the binary options alleged here satisfy the definition of an option necessary to trigger application of the CEA

As to Count 1, the CFTC alleges that Josh violated Section 4c(b) of the CEA "in connection with commodity option transactions." (¶ 95.) However, aside from its own conclusory assertions, the CFTC has not sufficiently pleaded that the financial instruments at issue are "options" as defined by the CEA.

The CEA defines an option to be "an agreement, contract, or transaction that is of the character of, or is commonly known to the trade as, an 'option' . . . ." 7 U.S.C. § 1a(36). Binary options are typically subject to CFTC regulation as an instrument "commonly known to the trade" as an option.[3] *See, e.g.*, *U.S. Commodity Futures Exch. Comm'n v. Vision Fin. Partners, LLC*, 190 F. Supp. 3d 1126, 1130 (S.D. Fla. 2016) (finding binary options were "known to the trade as an option" where CFTC's complaint adequately described the instruments as binary options).

---

[2]   Count 3 is not asserted against Josh.

[3]   This definition of an option is also unconstitutionally vague by virtue of including transactions that are "commonly known to the trade" as options. *See U.S. v. Coleman*, 609 F.3d 699, 706 (5th Cir. 2010) ("The vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." (internal quotations omitted)). This definition, which is akin to "you will know it when you see it," does not provide sufficient notice of what the phrase is actually intended to mean.

However, the Complaint contains few, if any, allegations concerning the nature of the alleged binary options at issue and thereby fails to plead that the alleged financial instruments were *in fact* transactions that were commonly known to the trade as options covered by the CEA. *The Complaint fails to detail even one specific transaction by any specific customer.* Indeed, the sole allegation concerning the financial instruments here is that the binary options were purportedly on "currency pairs, oil, and other commodities[.]" (¶ 2; *see also* ¶ 81.) Instead of alleging more, the CFTC opts for stock language, including an overview and explanation of binary options *in general*, rather than specifying *the binary options allegedly transacted*. (*See* ¶¶ 46–51.) These thin allegations fall far short of pleading facts sufficient to satisfy the definition of an option under the CEA or the requirement to plead sufficient facts to properly allege that the alleged binary options fall within the CEA section charged, and thus, the Court should dismiss Count 1 for failure to state a claim.

### b. Count 2 should be dismissed because the CFTC has not sufficiently alleged that the binary options alleged here constitute swaps

Similarly, the CFTC has failed to allege that the financial instruments at issue constitute swaps, and therefore the Court should dismiss Count 2 for failure to state a claim. A "swap" under the CEA includes, among other things, any agreement, contract, or transaction that is an option of any kind. 7 U.S.C. § 1a(47)(A). Courts have determined that binary options typically qualify as swaps. *See, e.g.*, *CFTC v. Fingerhut*, No. 1:20-cv-21887, 2021 WL 65069, at *10 (S.D. Fla. Jan. 7, 2021). However, for the reasons described above, the CFTC has not adequately alleged that the financial instruments here are options, and therefore has not alleged that the same financial instruments are swaps. Further, the Complaint contains few (if any) allegations that would allow the Court or a finder of fact to determine that the binary options here should be considered swaps. The Court should thus dismiss Count 2 for failure to state a claim.

*c.* *The CFTC has not adequately alleged the elements of Count 4*

The Complaint does not contain any allegations that Josh violated Section 4c(b) or Regulation 32.2 as charged in Count 4. Section 4c(b) prohibits individuals from "offer[ing] to enter into, enter[ing] into or confirm[ing] the execution of, any transaction involving any commodity regulated under this chapter which is of the character of, or is commonly known to the trade as, an 'option'[.]" 7 U.S.C. § 6c(b). Regulation 32.2 makes it unlawful "for any person or group of persons to offer to enter into, enter into, confirm the execution of, maintain a position in, or otherwise conduct activity related to any transaction in interstate commerce that is a commodity option transaction[.]" 17 C.F.R. § 32.2. The Complaint does not contain any allegation that *Josh* violated Section 4c(b) or Regulation 32.2. In fact, the Complaint contains so few allegations as to Count 4 that it is entirely unclear what the CFTC claims Josh even did that supposedly violates the sections of the CEA charged under Count 4. The Court should therefore dismiss Count 4 as to Josh for failure to state a claim.

**3.     The Complaint Does Not Adequately Allege That Josh Is a Control Person or That He Should Be Held Jointly and Severally Liable**

The CFTC has not adequately alleged that Josh is a control person, nor that he should be held jointly and severally liable. Thus, to the extent the CFTC seeks to hold Josh liable for acts as a control person or otherwise, those claims should be dismissed.

To establish control person liability under 7 U.S.C. § 13c(b) ("Section 13c(b)"), the CFTC must first allege that the individual: (1) had control over an entity alleged to be liable and (2) lacked good faith or knowingly induced the acts constituting the violation. *See CFTC v. McDonnell*, 332 F. Supp. 3d 641, 723 (E.D.N.Y. 2018); *CFTC v. Hunter Wise Commodities, LLC*, 1 F. Supp. 3d 1311, 1322 (S.D. Fla. 2014).

First, the CFTC must show that Josh "possessed general control over the operation of the entity principally liable" and "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, even if such power was not exercised." *CFTC v. Kratville*, 796 F.3d 873, 894 (8th Cir. 2015); *CFTC v. Allied Mkts. LLC*, 371 F. Supp. 3d 1035, 1052 (M.D. Fla. 2019); *Hunter Wise Commodities*, 1 F. Supp. 3d at 1323. The Complaint does not allege facts sufficient to make this threshold showing. Here, the CFTC has expressly alleged only that Josh is liable under Section 13c(b) as a control person of defendant Orlando Union—an entity which is alleged to have been (amorphously) "used" as part of the purported binary options business. (*See, e.g.*, ¶ 25.)

The CFTC does not allege (because it cannot allege) that Josh had control over any of the individuals or entities that allegedly operated what the Complaint dubs "the Cartu Brands," nor does it allege that Orlando Union was part of "the Cartu Brands" or "the Cartu Platform." (*See* ¶¶ 2, 5.) Under the CFTC's own theory, then, it must allege that Orlando Union possessed control over the binary options business in order for Josh to be found liable. Any such allegations are glaringly absent from the Complaint. Indeed, the Complaint contains no allegations that Orlando Union *could* have conducted or directed any particular transaction, and certainly contains no specific allegations regarding any options transaction purportedly conducted by Orlando Union. The Complaint thus fails to allege that Orlando Union is a principally liable entity.

b.    *The CFTC has not adequately alleged that Josh lacked good faith*

Even if the CFTC adequately alleged that Josh had control over the operations of the principally liable entity (which it has not), other than the conclusory allegation that he "did not act in good faith … as to Orlando Union[,]" the CFTC has not pleaded that he lacked good faith over

the binary options business. *CFTC v. Total Call Grp., Inc.*, No. 4:10-cv-00513, 2012 WL 1642196, at *10 (E.D. Tex. Mar. 30, 2012) (noting that CFTC "has the burden here of establishing that 'the controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation.'"). To establish lack of good faith, the CFTC must show that the individual failed to maintain a "'reasonably adequate system of internal supervision and control' or did not oversee the system 'with any reasonable diligence.'" *Hunter Wise Commodities*, 1 F. Supp. 3d at 1323; *CFTC v. Johnson*, 408 F. Supp. 2d 259, 269 (S.D. Tex. 2005). The Complaint wholly lacks allegations about the existence or non-existence of supervision, control, or reasonable diligence, let alone any allegations specifically relating to Josh's involvement in the supposed business. The allegations are only conclusory: that Josh "did not act in good faith." (¶¶ 100, 110, 127.) These conclusory allegations standing alone do not meet the CFTC's burden of sufficiently pleading that Josh did not act in good faith to such an extent that would render him liable for the acts of others. *Total Call Grp.*, 2012 WL 1642196, at *10.

  c.  *The CFTC has not adequately alleged that Josh knowingly induced the acts at issue*

Furthermore, the CFTC has not alleged that Josh knowingly induced the acts at issue. To establish the "knowing inducement" element, the CFTC has the burden of showing that "the controlling person had actual or constructive knowledge of the core activities that constitute the violation at issue and allowed them to continue." *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1334 (11th Cir. 2002); *Total Call Grp.*, 2012 WL 1642196, at *10.

In *Johnson*, the Southern District of Texas found that the CFTC had sufficiently alleged a claim against the defendant for liability as a controlling person to withstand dismissal under Rule 12(b)(6), where the CFTC alleged defendant: (1) was a trader and the head of the trading desk, so was responsible for the actions and conduct of the desk's trading employees, (2) controlled the

activities of and was aware of the price reporting activities of other defendants and the scheme, but did not take steps to prevent those activities, and (3) took no steps to enforce the company policy regarding communicating with pricing agencies with reasonable diligence, despite being in a position to do so. *Johnson*, 408 F. Supp. 2d at 269–70.

Unlike in *Johnson*, the Complaint here is (again) lacking. There are no allegations about Josh's supposed role in the purported binary options business. There are no allegations about Josh's supposed responsibilities in the business. There are no allegations about what aspects of the business Josh supposedly controlled. And there are no allegations that Josh failed to take steps to prevent the activities underlying the alleged violations. To the contrary, at most, the CFTC describes Josh as a passive investor. Even assuming the facts alleged in the Complaint are true, those "facts" do not state a claim that Josh is a control person of anything, and therefore the Court should dismiss all counts against Josh to the extent the CFTC seeks to hold him liable under the control person theory.

To the extent the CFTC also claims that Josh should be held jointly and severally liable, recent case law suggests that control person liability and joint and several liability are coterminous. In *CFTC v. US Coin Bullion LLC*, No. 6:20-cv-40, 2021 WL 4935728 (M.D. Fla. July 13, 2021), the court determined that the CFTC must allege that the defendants can be held liable for the actions of each of the other defendants. *Id*. at *7. Typically, an individual has not been held jointly and severally liable for penalties "without a finding that the individual is a controlling person." *Id*. at *8. Like *Coin Bullion*, the CFTC has plead little (if anything) to support a finding that Josh should be held jointly and severally liable: it has provided no "explanation as to why [he] should be held jointly and severally liable," and has failed to provide "any argument establishing how any of the requested monetary relief could be attributed solely" to him. *Id*.

## III. THE COMPLAINT SHOULD BE DISMISSED BECAUSE VENUE IS IMPROPER AS TO JOSH

The CFTC has failed to sufficiently plead that the Western District of Texas is a proper venue as to Josh and for each of the claims against him, and thus the Complaint should be dismissed under Rule 12(b)(3). The law is clear that "[i]n actions involving multiple defendants and multiple claims, the plaintiff must establish venue is proper as to each defendant and as to each claim." *Redi-Mix Sols.*, 2017 WL 3671377, at *8 (citation omitted). Where venue is improper, dismissal of the suit is appropriate. *See Guajardo v. State Bar of Texas*, 803 F. App'x 750, 755-56 (5th Cir. 2020) (affirming district court's dismissal of claim for improper venue as to certain defendants). Where the plaintiff fails to adequately plead that venue is proper as to each defendant and as to each claim, courts in this circuit routinely dismiss complaints for improper venue.[4]

In the instant case, rather than addressing venue as to each defendant and each claim individually, as required, the CFTC instead attempts to invoke the venue provision of the CEA, 7 U.S.C. § 13a-1(e), without offering any specific factual support as to Josh or the claims against him. (*See* ¶ 14.) The entirety of the CFTC's allegations regarding venue is that (i) one of the individual defendants and a company allegedly owned and controlled by that individual were "found in and inhabit" the district, (ii) "all Defendants transacted business in this District," and

---

[4]    *See, e.g.*, *Southampton, Ltd. v. Le Norman*, No. 3:18-cv-1089, 2019 WL 7902959, at *4 (N.D. Tex. Sept. 3, 2019) (granting motions to dismiss for improper venue where plaintiffs addressed venue "only as Defendant groups, rather than as to each of [the] nine Defendants separately" and "neglect[ed] to address venue as to each of Plaintiffs' claims"); *Gilmour ex rel. Grantor Trusts v. Blue Cross & Blue Shield of Alabama*, No. SA-17-ca-518, 2019 WL 2147580, at *9 (W.D. Tex. Mar. 6, 2019) (granting motion to dismiss in part due to lack of venue); *Real Est. Training Int'l, LLC v. Nick Vertucci Cos.*, No. 8:14-cv-00546, 2014 WL 1383897, at *2 (W.D. Tex. Apr. 8, 2014) (finding that plaintiff's "conclusory" assertions that a "substantial part of the events or omissions giving rise to the claim" occurred in the Western District of Texas were "insufficient" and, therefore, plaintiff "failed to meet his burden of establishing this Court's venue"); *see also Akurate Dynamics, LLC v. Carlisle Fluid Techs., Inc.,* No. 6:20-cv-00606, 2021 WL 860006, at *2 (W.D. Tex. Mar. 8, 2021) (granting motion to dismiss for improper venue).

(iii) "the acts and practices in violation of the [CEA] and Regulations occurred within this District, among other places." (*Id.*) However, there is no allegation regarding what, if anything, actually transpired within this district, much less any allegation that Josh—whom the CFTC alleges resides in Hungary (¶ 18)—has even a remote connection to this district.

The CFTC does not allege (because it cannot) that Josh was found in or is an inhabitant of this district. The mere fact that two of the other defendants—whom Josh is not even alleged to have ever met or communicated with—may be located within this district is not sufficient to establish venue as to him. *See Tesoro Refin. & Mktg. Co. v. C.A.R. Enters., Inc.*, No. SA-18-cv-820, 2018 WL 6050603, at *8 (W.D. Tex. Nov. 19, 2018) ("[V]enue must be proper for each party; the fact that a claim for some of the plaintiffs or against some of the defendants arose in a particular district does not make that district a proper venue for parties as to whom the claim arose somewhere else.").

Nor does the CFTC allege that Josh personally transacted business or conducted any act or practice in violation of the CEA and accompanying regulations in this district. In fact, there is not a single allegation in the Complaint that *any* of the purported customers of the alleged binary options trading business were located or resided in Texas, let alone in this district, or that any transaction occurred here. *Compare with CFTC v. Worldwide Commodity Corp.*, 366 F. Supp. 2d 276, 283 (E.D. Pa. 2005) (finding venue was proper and thus denying motion to dismiss where CFTC alleged that defendant "held trading accounts on behalf of 31 customers in the [district,]… held each customer's money in a segregated account and placed trades on behalf of each customer[,]… mailed daily trade confirmation statements to each customer after each trade was placed and mailed monthly statements to customers showing the status of their accounts," such that defendant "maintained an ongoing business relationship with the 31 customers in this

district"); *CFTC v. Savage*, 611 F.2d 270, 278 (9th Cir. 1979) (holding that, although defendant resided in and executed all allegedly improper trades in Chicago, venue in Central District of California was proper because defendant placed telephone calls to that district that were an "integral aspect of the commodity futures contract transactions at issue in this suit").

Because the CFTC impermissibly lumps together all ten defendants and all four claims, wholly failing to plead how venue is allegedly proper as to *each* of them, the Complaint as against Josh should be dismissed for improper venue under Rule 12(b)(3).

## IV. THE CFTC'S ATTEMPTED SERVICE OF PROCESS ON JOSH WAS INSUFFICIENT AND WARRANTS DISMISSAL

In addition to all of the Complaint's previously described substantive deficiencies, the Complaint should also be dismissed under Rule 12(b)(5) because the CFTC's attempted service on Josh was untimely under Rules 4(m) and 4(f). Rule 4(m) provides plaintiffs with 90 days to serve defendants. Fed. R. Civ. P. 4(m). While subdivision (m) "does not apply to service in a foreign country under Rule 4(f)," *id.*, the Fifth Circuit recognizes that plaintiffs do not have unlimited time to serve foreign defendants, like Josh. *Lozano v. Bosdet*, 693 F.3d 485, 488 (5th Cir. 2012). Instead, courts apply a "'flexible due diligence' standard to determine whether the delay should be excused." *Id.* at 488–89.

Courts in this circuit have found dismissal appropriate where a plaintiff has not demonstrated reasonable diligence in attempting service. *Jensen v. Rollinger*, 2015 WL 13796692, at *1 (W.D. Tex. Dec. 11, 2015) (dismissing complaint for failure to timely serve).[5] The CFTC

---

[5] *See also Buholtz v. Sogamoso*, No. 4:19-cv-00245, 2020 WL 9936209, at *2 (E.D. Tex. Mar. 16, 2020) (finding plaintiff did not demonstrate reasonable diligence where plaintiff had not served defendant 231 days after complaint was filed and five months after an order to update the court); *Veliz v. Rimax Contractors, Inc.*, No. 15-cv-6339, 2016 WL 1704496, at *3 (E.D. La. Apr. 28, 2016) (dismissing complaint for lack of reasonable diligence where plaintiff initially attempted to serve foreign defendant by serving complaint on non-party CFO of defendant's company, but

has not demonstrated reasonable diligence in attempting service on Josh after filing its Complaint on September 2, 2020 and prior to seeking an order—more than ten months later—authorizing service by alternative means (ECF No. 29) (the "CFTC's Service Motion"). Therefore, and as further explained below, the Court should dismiss the Complaint.[6]

The facts regarding attempted service on Josh, as presented in the CFTC's Service Motion, demonstrate that the CFTC's lack of reasonable diligence is even more pronounced than that of the plaintiffs in *Jensen*. In *Jensen*, plaintiffs initially attempted service on a foreign defendant by in-person service and supplied an affidavit sworn to by the individual who served the defendant. *Jensen v. Rollinger*, 2015 WL 13796693, at *2 (W.D. Tex. Feb. 26, 2015), *R. & R. adopted*, 2015 WL 13796694 (W.D. Tex. Mar. 20, 2015). The magistrate found that the affidavit contained conflicting information and thus recommended denial of plaintiffs' motion for default judgment because the evidence of service was insufficient. 2015 WL 13796693, at *2. The district judge then found that plaintiffs' failure over the course of the ensuing five months to provide substantive information about subsequent attempts to serve the defendant and the plaintiffs' conclusory statements regarding the adequacy of their initial service attempt permitted the conclusion that "the plaintiffs did nothing in the intervening five months to effect service on" defendant. 2015

---

failed to serve defendant personally, serve process on defendant's domicile, and failed to make any subsequent attempts five months after filing of complaint).

[6]   Granting the motion to dismiss for failure to comply with Rules 4(f) and 4(m), even if without prejudice, could have implications should the CFTC re-file and effect timely service on Josh. Depending on the nature of the re-filed complaint and allegations, Josh may have grounds to assert defenses such as a statute of limitations defense that could, among other things, defeat portions of claims asserted and further limit the relief available. *See, e.g.*, *Hilbun v. Goldberg*, 823 F.2d 881, 883 (5th Cir. 1987) ("A federal court that dismisses without prejudice a suit arising from a federal statutory cause of action has not adjudicated the suit on its merits, and leaves the parties in the same legal position as if no suit had ever been filed."); *see also Lambert v. U.S.*, 44 F.3d 296, 298 (5th Cir. 1995) ("the district court's order dismissing the suit without prejudice left Lambert in the same position as if the first suit had never been filed").

WL 13796692, at *1.  The court thus concluded that "[s]uch conduct cannot be said to demonstrate 'reasonable diligence'" and dismissed the complaint.  *Id.*

Like the plaintiffs in *Jensen*, the CFTC, despite its alleged, but deficient, early efforts, failed to demonstrate that it exercised "reasonable diligence" in attempting service on Josh.  In connection with the CFTC's Service Motion, it represented to this Court that it attempted service via USPS and Hague Convention protocols on September 18, 2020 and November 13, 2020, respectively.  *See* ECF No. 29 at 6.  However, the CFTC's "evidence" in support thereof was woefully inadequate to demonstrate that its attempted efforts to serve Josh were reasonable.

First, the CFTC submitted an undated scan of the exterior of an envelope addressed to Josh in Hungary and designated for first class service via USPS, with return receipt requested—an improper method of service under the circumstances.  *See* ECF No. 29, Ex. 2 at 4.  This method of service would have been proper only if Josh was located within a judicial district of the United States.  *See* Fed. R. Civ. P. 4(e)(1) (allowing service in accordance with state law for individuals located within a judicial district of the United States); Tex. R. Civ. P. 106 (permitting service via registered or certified mail, with return receipt requested).  However, the CFTC admitted it knew that Josh was not located within the United States (*see* ¶ 18), and therefore this method of service was proper only if permitted by the Hague Convention.  *See* Fed. R. Civ. P. 4(f).

Hungary has objected to service by mail under Article 10 of the Hague Convention.  *See* The Hague Conference on Private International Law: Hungary – Central Authority & Practical Information;[7] Dutch Govt. Treaty Database: Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters: Parties With Reservations, Declarations

---

[7]    Available at https://www.hcch.net/en/states/authorities/details3/?aid=673  (last visited Feb. 7, 2022).

and Objections, (entry for Hungary).[8]  Therefore, even if this attempt at service had been

successful, it would have been insufficient.  *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513

(2017) ("[I]n cases governed by the Hague Service Convention, service by mail is permissible ***if***

***two conditions are met***: first, the receiving state has not objected to service by mail; and second,

service by mail is authorized under otherwise-applicable law." (emphasis added)).

Moreover, nowhere in the CFTC's Service Motion did the CFTC offer any reasonable basis

for concluding that Josh was located, and thus could properly be served, at the Hungarian address.

To the contrary, by the CFTC's own admission, it apparently came to learn, through unidentified,

undated alleged "[r]ecent social media activity[,]" that Josh "may be in Russia[.]"  *See* ECF No.

29 at 6.  Nonetheless, the CFTC proffered no explanation as to why it did not attempt service in

Russia, via the Hague Convention or otherwise.

Second, the CFTC submitted an email (in Hungarian) it presumably received from UPS

confirming that a delivery to the Ministry of Justice in Hungary was scheduled for November 16,

2020.  *See* ECF No. 29, Ex. 2 at 12–13.  While the CFTC represented to the Court that it "caused

the Summons and Complaint to be sent . . . . via the Hague Convention service procedures on

November 13, 2020[,]" (ECF No. 29 at 6), the CFTC made no specific representation that it

followed each of the requirements under the Hague Convention (for example, the requirement to

include official Hungarian translations of the documents, along with their original English form),

nor did the CFTC provide any supporting affidavit or other evidence that it followed those

requirements.  The CFTC claims to have received no response from the Ministry, but failed to

---

8    Available at  https://treatydatabase.overheid.nl/en/Verdrag/Details/004235_b#Hungary  (last visited Feb. 7, 2022).

provide the Court with even a copy of any confirmation of delivery from UPS.  Nor did the CFTC describe any attempted follow-up communications with the judicial authority in Hungary.

Without submitting any supporting affidavit or other evidence, the CFTC represented in its motion that it "communicated with various regulatory agencies and engaged in other efforts to try to determine Josh's location, without success."  *Id.* at 6.  However, the CFTC offered no details regarding who, what, where, when, or how those alleged communications occurred, or what the purported "other efforts" entailed.  *See generally id.*  Finally, and perhaps most significantly, the CFTC offered no explanation whatsoever for why it waited *nearly 245 days, or eight months*, after its second alleged attempt at service before seeking the Court's approval for alternative service (*see id*.).  Without such essential details, there is no basis on which to excuse the CFTC's delay in even attempting to effectuate service during that time.  Because the CFTC failed to exercise reasonable diligence in its attempts to serve Josh prior to seeking relief from this Court, like in *Jensen*, the Complaint should be dismissed for improper service.[9]

---

[9]    The Court's *de facto ex parte* order of July 28, 2021, authorizing service by alternative means (*see* ECF No. 32) (the "Service Order"), did not absolve the CFTC's prior indolence or its failure to comply with the Federal Rules of Civil Procedure, especially not without providing Josh notice and an opportunity to be heard.  Moreover, Josh's Waiver of Service of the Summons and Complaint, submitted on October 8, 2021, over a year after the filing of the Complaint, specifically stated that he keeps "all defenses or objections to the lawsuit" and waives only "objections to the absence of summons or of service."  Thus, other than waiving the argument that he has not actually received the summons and complaint, thereby relieving the CFTC of the obligation to (in our view belatedly) complete the steps ordered by the Court (such as publishing notice in the Times of Israel for at least six months), Josh preserved all other rights he had up to that date, including his right to object to the CFTC's failure to exercise reasonable diligence in attempting service prior to October 8, 2021.  Indeed, Federal Rule of Civil Procedure 4(d)(4) expressly states "[w]hen the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver."  Fed. R. Civ. P. 4(d)(4).  Thus, under the Rules, service was completed no earlier than October 8, 2021—long after the Rules and reasonable diligence require.  Dismissal remains the proper remedy.

## V.  THE RELIEF REQUESTED IN THE FORMS OF DISGORGEMENT AND RESTITUTION SHOULD BE DISMISSED

Pursuant to Rule 12(b)(1) and 12(b)(6), Josh moves to dismiss Parts D and E of the Relief Requested, which seek improperly broad disgorgement of "all benefits received" and "full restitution," respectively.  As explained below, the Court lacks jurisdiction to order Josh to pay (i) disgorgement or restitution for alleged CEA violations occurring before September 2, 2015,[10] (ii) disgorgement for anything other than proven net profits, or (iii) restitution to anyone whose losses were not proximately caused by the alleged CEA violations, nor has the CFTC sufficiently stated a claim for such relief even if the Court had such jurisdiction.

### A.  Disgorgement and Restitution In Connection With Alleged Violations Prior to September 2, 2015 Are Time Barred

Where a federal law does not provide a statute of limitations, such as the CEA for enforcement actions brought by the CFTC, courts look to the federal catch-all statute, 28 U.S.C. § 2462, which provides for a five-year statute of limitations in actions for civil fines, penalties, or forfeiture.  Both disgorgement and restitution constitute penalties within the meaning of Section 2462, and therefore, the five-year statute of limitations applies to both forms of relief requested. *See Kokesh v. SEC*, 137 S. Ct. 1635, 1639 (2017); *CFTC v. Gramalegui*, No. 15-cv-02313, 2018 WL 4610953, at *30 (D. Colo. Sept. 26, 2018).  Here, the CFTC has alleged violations—and therefore seeks recovery for—a "Relevant Period" dating back to May 1, 2013, well-beyond the applicable statute of limitations.  Accordingly, the statute of limitations bars the CFTC from

---

[10]   The September 2, 2015 date is based on the filing date of the current Complaint.  Josh reserves the right to argue that the operative bar date is later should any of his motions to dismiss be granted in whole or in part, and the CFTC subsequently permitted to re-file or amend its Complaint.  *See* n.6, *supra.*

recovering disgorgement or restitution from Josh for alleged violations occurring before September 2, 2015—five years before the CFTC filed the instant Complaint.

In *Kokesh*, the Supreme Court held that disgorgement imposed as a sanction for violating the federal securities laws is a "penalty" within the meaning of Section 2462, the applicable statute of limitations. *Kokesh*, 137 S. Ct. at 1639. As a result, the Court held that the SEC cannot seek disgorgement of ill-gotten gains older than five years. *Id.* at 1644. The Court's analysis there turned on whether and to what extent the disgorgement sought by the SEC was punitive in nature. *Id.* at 1642. Subsequent courts have applied *Kokesh* to actions for disgorgement and restitution brought by the CFTC. *See, e.g.*, *Gramalegui*, 2018 WL 4610953, at *30. For example, in *Gramalegui*, the court applied Section 2462's five-year limitations period to both disgorgement and restitution sought by the CFTC, relying in part on the *Kokesh* Court's observation that "any remedy that serves a punitive purpose—even if punishment is not the sole or primary purpose thereof—constitutes punishment for purposes of applying [S]ection 2462." 2018 WL 4610953, at *30 (citing *Kokesh*, 137 S. Ct. at 1645). As that court recognized, the Supreme Court has noted that "restitution is not merely compensatory" and that "disgorgement is simply a form of restitution." *See id.* (listing cases).

The CFTC's excessively broad requests for disgorgement and restitution in the instant case seek more than just to remedy alleged harms, they are punitive in nature. For example, Part D of the "Relief Requested" section of the Complaint improperly seeks disgorgement of "all *benefits* received including, but not limited to, salaries, commissions, loans, fees, revenues, real and personal property and trading profits[.]" (¶ 35 (emphasis added).) The scope of this request is expressly prohibited by the CEA, which authorizes the CFTC to seek, and the court to impose on a proper showing, only "disgorgement of *gains* received in connection with [the CEA] violation."

7 U.S.C. § 13a-1(d)(3)(B) (emphasis added); *see also Liu v. SEC*, 140 S. Ct. 1936, 1940-41 (2020) (limiting disgorgement in SEC enforcement proceedings to net profits). In seeking "all benefits[,]" rather than properly limiting their disgorgement request to just alleged "gains," the CFTC is plainly pursuing punishment.

Similarly as to restitution, Part E of the "Relief Requested" section of the Complaint improperly seeks "full restitution to every person or entity whose funds Defendants received or causes another person or entity to receive as a result of acts and practices that constituted" the alleged violations, without any limitation as to time or a proximate causation requirement. In contrast, the CEA expressly authorizes the CFTC to seek, and the court to impose on a proper showing, only "restitution to persons who have sustained losses *proximately caused* by such violation (in the amount of such losses)[.]" 7 U.S.C. § 13a-1(d)(3)(A) (emphasis added). Thus, the CFTC's request for improperly broad restitution amounts to punishment.

Indeed, Parts D and E of the Relief Requested are part of a laundry list of wide-ranging relief sought, at least in part, for punitive purposes as a consequence of the alleged violations of law. Like *Gramalegui*, this Court should find that the disgorgement and restitution sought by the CFTC constitute penalties within the definition of Section 2462, apply Section 2462's five-year limitations period to that relief sought, and dismiss the Complaint insofar as it seeks disgorgement or restitution from Josh for alleged violations that occurred prior to September 2, 2015.

**B.      Disgorgement and Restitution In Connection With Alleged Violations After September 2, 2015 Should be Limited to Amounts Authorized by the CEA**

As described above, the CFTC's requests for disgorgement and restitution—even as to alleged violations that arguably do fall within the applicable five-year statute of limitations—go well beyond what the CEA authorizes it to seek, or the Court to impose (*i.e.*, seeking "benefits" rather than "gains" and seeking alleged losses not proximately caused by the alleged CEA

violations).  *See* 7 U.S.C. § 13a-1(d)(3)(B).  The Court should thus dismiss the Complaint insofar as it violates the express terms of the CEA.  *See CFTC v. Lake Shore Asset Mgmt. Ltd.*, 496 F.3d 769, 771 (7th Cir. 2007) (vacating *ex parte* order on grounds that it exceeded scope of CEA where lower court authorized temporary restraining order to "last indefinitely").

## CONCLUSION

For the reasons stated above, the CFTC's claims against Josh should be dismissed in their entirety as a matter of law.  Moreover, because there are fundamental deficiencies in all of the claims against Josh that cannot be cured by amendment, those claims should be dismissed with prejudice.  Finally, any claims for disgorgement and restitution should be dismissed insofar as they exceed the CFTC's statutory authority.

Dated: February 7, 2022                                      Respectfully submitted,

**ARENT FOX LLP**                                           **HUSCH BLACKWELL LLP**

By:  _/s Glenn Colton_                                      By:  _/s Gregg N. Sofer_
    Glenn Colton (*Pro Hac Vice*)            Gregg N. Sofer
    Michelle J. Shapiro (*Pro Hac Vice*)     111 Congress Avenue, Suite 1400
    1301 Avenue of the Americas, 42nd Floor   Austin, TX 78701
    New York, NY 10019                        Telephone:  512.472.5456
    Telephone:  212.484.3900                  Facsimile:   512.479.1101
    Facsimile:   212.484.3990                 gregg.sofer@huschblackwell.com
    glenn.colton@arentfox.com
    michelle.shapiro@arentfox.com

*Attorneys for Defendant Joshua Cartu*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system.

　　　　　　　　　　　　　　/s Glenn Colton
　　　　　　　　　　　　　　Glenn Colton