**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. 1:20-CV-00908 |
| DAVID CARTU, *et al.*, | § § | |
| Defendants. | § § § § | |

**<u>DEFENDANT DAVID CARTU'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

Page #

**PRELIMINARY STATEMENT** ........................................................................... 1

**BACKGROUND** ........................................................................................................ 2

I.     THE CFTC'S INADEQUATE PERSONAL JURISDICTION ALLEGATIONS ............ 3

II.    THE CFTC'S INSUFFICIENT MISREPRESENTATIONS AND DECEPTION CLAIMS ........................................................................................................ 6

**ARGUMENT** ............................................................................................................. 7

I.     THE COURT LACKS PERSONAL JURISDICTION OVER DAVID ........................... 7

    A.    The CFTC Does Not Allege "Continuous and Systemic Contacts" with the United States Sufficient for General Jurisdiction. ................................ 8

    B.    The CFTC Does Not Allege Sufficient Minimum Contacts with the United States to Establish a Basis for Specific Jurisdiction. ............................ 8

        1.    The CFTC Fails to Allege that David was Responsible for Any Purposeful Acts Aimed at the United States. ............................. 9

        2.    Contacts of Agents or Co-Conspirators with the United States Cannot Be Imputed to David. ................................................ 11

        3.    Exercise of Jurisdiction Over David Cartu Would Be Unfair and Unreasonable ........................................................................ 13

II.    THE COMPLAINT DOES NOT ADEQUATELY ALLEGE PROPER VENUE ......... 14

III.   THE CFTC HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ........................................................................................... 14

    A.    The CEA Does Not Apply Extraterritorially. ..................................... 14

    B.    The CFTC Has Failed To Plead Facts Plausibly Supporting Any Cause of Action as Required by Fed. R. Civ. P. 8. ........................................ 15

    C.    The CFTC Has Failed to Plead Fraud with Particularity as Required by Rule 9(b). ........................................................................... 19

i

IV.   THE REQUEST FOR DISGORGEMENT AND RESTITUTION SHOULD BE
      DISMISSED OR LIMITED ............................................................................................. 23

**CONCLUSION** ......................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akurate Dynamics, LLC v. Carlisle Fluid Techs., Inc.*,
No. 6:20-CV-00606-ADA, 2021 WL 860006 (W.D. Tex. Mar. 8, 2021) ..............................14

*Allegiance Cap. Corp. v. Great Canadian Gaming Corp.*,
No. Civ.A.3-03-CV-751-R, 2004 WL 2203256 (N.D. Tex. Sept. 30, 2004) .........................13

*Asahi Metal Indus. Co., Ltd. v. Superior. Ct. of Cal.*,
480 U.S. 102 (1987)..................................................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................15, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................15

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
343 F.3d 719 (5th Cir. 2003) ....................................................................................................19

*In re Blech Sec. Litig.*,
961 F. Supp. 569 (S.D.N.Y. 1997).........................................................................................3, 23

*Bradford v. Nationwide Ins. Co. of Am.*,
No. 1:17-CV-1067-RP, 2018 WL 2452971 (W.D. Tex. May 31, 2018)................................20

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*,
137 S. Ct. 1773 (2017)................................................................................................................8

*Brown v. Bilek*,
401 F. App'x 889 (5th Cir. 2010) ..............................................................................................19

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).....................................................................................................................9

*Busch v. Buchman, Buchman & O'Brien, L. Firm*,
11 F.3d 1255 (5th Cir. 1994) ......................................................................................................8

*Calder v. Jones*,
465 U.S. 783 (1984).....................................................................................................................9

*Centurion Serv. Grp., LLC v. SBMC Healthcare, LLC*,
944 F. Supp. 2d 617 (N.D. Ill. 2013) ........................................................................................13

*Choi v. Tower Rsch. Cap. LLC*,
165 F. Supp. 3d 42 (S.D.N.Y. 2016).....................................................................................14, 17

*Clemons v. WPRJ, LLC*,
928 F. Supp. 2d 885 (S.D. Tex. 2013) ......................................................................................12

*Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co.*,
    310 F.3d 1321 (11th Cir. 2002) ..................................................................18

*Del Castillo v. PMI Holdings N. Am. Inc.*,
    No. 4:14-CV-03435, 2016 WL 3745953 (S.D. Tex. July 13, 2016) ................15, 18

*Delta Brands Inc. v. Danieli Corp.*,
    99 F. App'x 1 (5th Cir. 2004) ....................................................................12

*Embarcadero Techs. Inc. v. Redgate Software Inc.*,
    No. 1:17–cv–444–RP, 2018 WL 315753 (W.D. Tex. Jan. 4, 2018) (Pitman, J.) ..................12

*Freudensprung v. Offshore Tech. Servs., Inc.*,
    379 F.3d 327 (5th Cir. 2004) ....................................................................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).................................................................................8

*Gilmour ex rel. Grantor Trs. v. Blue Cross & Blue Shield of Ala.*,
    No. SA-17-CA-518-FB, 2019 WL 2147580 (W.D. Tex. Mar. 6, 2019) ................14

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ....................................................................20

*Guidry v. U.S. Tobacco Co.*,
    188 F.3d 619 (5th Cir. 1999) ....................................................................12

*Hawkins v. Upjohn Co.*,
    890 F. Supp. 601 (E.D. Tex. 1994) .............................................................12

*Hee Sook Nam v. Tex Net, Inc.*,
    No. 3:20-CV-1132-S, 2021 WL 535852 (N.D. Tex. Feb. 12, 2021) ..................11

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984).................................................................................10

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*,
    302 F.3d 552 (5th Cir. 2002) ................................................................20, 22

*Head v. Las Vegas,*
    760 F. App'x 281 (5th Cir. 2019) ..............................................................8, 9

*Head v. Las Vegas Sands, LLC*,
    298 F. Supp. 3d 963 (S.D. Tex. 2018) ........................................................7, 10

*Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*,
    535 F.3d 359 (5th Cir. 2008) ....................................................................11

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).................................................................................8, 13

*ITL Int'l, Inc. v. Constenla, S.A.*,
    669 F.3d 493 (5th Cir. 2012) ....................................................................8

*Jepson, Inc. v. Makita Corp.*,
  34 F.3d 1321 (7th Cir. 1994) ...........................................................................22

*Kokesh v. SEC*,
  137 S. Ct. 1635 (2017)....................................................................................23

*Liberty Bankers Life Ins. Co. v. Lenhard*,
  No. 3:16-CV-02417-N, 2018 U.S. Dist. LEXIS 144745 (N.D. Tex. Apr. 9,
  2018) ...............................................................................................................20

*Liu v. SEC*,
  140 S. Ct. 1936 (2020)....................................................................................24

*Lovelace v. Software Spectrum Inc.*,
  78 F.3d 1015 (5th Cir. 1996) .....................................................................20, 22

*McFadin v. Gerber*,
  587 F.3d 753 (5th Cir. 2009) .......................................................................9, 11

*Monkton Ins. Servs., Ltd. v. Ritter*,
  768 F.3d 429 (5th Cir. 2014) ............................................................................8

*Morrison v. Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010).....................................................................................3, 14

*MWK Recruiting, Inc. Jowers v. Couns. Unlimited LLC*,
  No. 1:18-CV-444-RP, 2020 WL 7229977 (W.D. Tex. Dec. 8, 2020) (Pitman,
  J.)................................................................................................................20, 22

*Nguyen v. Phu Nguyen*,
  No. 4:19-CV-2229, 2020 WL 709328 (S.D. Tex. Feb. 12, 2020) .........................12

*Nicholas v. Ameris Bank*,
  No. 1:20-CV-1054-RP, 2021 WL 2953164 (W.D. Tex. June 8, 2021) (Pitman,
  J.).....................................................................................................................20

*Off. Stanford Invs. Comm. v. Greenberg Traurig, LLP*,
  No. 3:12-CV-4641-N, 2015 WL 13741905 (N.D. Tex. Feb. 4, 2015) ...................19

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
  253 F.3d 865 (5th Cir. 2001) ............................................................................9

*Pervasive Software Inc. v. Lexware GmbH & Co. Kg*,
  688 F.3d 214 (5th Cir. 2012) ..........................................................................10

*Plotkin v. IP Axess, Inc.*,
  407 F.3d 690 (5th Cir. 2005) ..........................................................................19

*R.E. Davis Chem. Corp. v. Nalco Chem. Co.*,
  757 F. Supp. 1499 (N.D. Ill. 1990) ..................................................................22

*Southampton, Ltd. v. Le Norman*,
  No. 3:18-CV-1089-K, 2019 WL 7902959 (N.D. Tex. Sept. 3, 2019) ...................14

*Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) ........................................................................21

*Star Tech., Inc. v. Tultex Corp.*,
   844 F. Supp. 295 (N.D. Tex. 1993) ...............................................................12

*Tesoro Refin. & Mktg. Co., LLC v. C.A.R. Enters., Inc.*,
   No. SA-18-CV-820-XR, 2018 U.S. Dist. LEXIS 197032 (W.D. Tex. Nov. 19,
   2018) ................................................................................................................14

*Trois v. Apple Tree Auction Ctr., Inc.*,
   882 F.3d 485 (5th Cir. 2018) ........................................................................11

*U.S. Commodity Futures Exch. Comm'n v. Vision Fin. Partners, LLC*,
   190 F. Supp. 3d 1126 (S.D. Fla. 2016) .........................................................16

*U.S. Commodity Futures Trading Comm'n v. Giddens*,
   No. 1:11-cv-2038-WSD, 2012 WL 603592 (N.D. Ga. Feb. 24, 2012).................22

*U.S. Commodity Futures Trading Comm'n v. Gramalegui*,
   No. 15-cv-02313, 2018 WL 4610953 (D. Colo. Sept. 26, 2018)............................23

*U.S. Commodity Futures Trading Comm'n v. Growth Cap. Mgmt., LLC*,
   No. 3:10-CV-1473-B, 2011 WL 880429 (N.D. Tex. Mar. 11, 2011)....................19

*U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*,
   1 F. Supp. 3d 1311 (S.D. Fla. 2014) .....................................................17, 18

*U.S. Commodity Futures Trading Comm'n v. Johnson*,
   408 F. Supp. 2d 259 (S.D. Tex. 2005) ..........................................................18

*U.S. Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.*,
   153 F. Supp. 3d 996 (N.D. Ill. 2015) ...........................................................20

*U.S. Commodity Futures Trading Comm'n v. Kratville*,
   796 F.3d 873 (8th Cir. 2015) ........................................................................18

*U.S. Commodity Futures Trading Comm'n v. M25 Invs. Inc.*,
   No. 3:09-CV-1831-M, 2010 WL 769367 (N.D. Tex. Mar. 6, 2010)....................19, 20, 21, 22

*U.S. Commodity Futures Trading Comm'n v. McDonnell*,
   332 F. Supp. 3d 641 (E.D.N.Y. 2018) ..........................................................17

*U.S. Commodity Futures Trading Comm'n v. Total Call Grp., Inc.*,
   No. 4:10-cv-00513-RAS-DDB, 2012 WL 1642196 (E.D. Tex. Mar. 30, 2012) ....................18

*U.S. v. Coleman*,
   609 F.3d 699 (5th Cir. 2010) ........................................................................16

*Viahart, LLC v. Arkview LLC*,
   No. 6:19-cv-00406, 2020 WL 4905542 (E.D. Tex. Aug. 20, 2020)....................10

*Walden v. Fiore*,
   571 U.S. 277 (2014)........................................................................................9

*Waraich v. Nat'l Austl. Bank Ltd.*,
    No. CV H-18-4069, 2019 WL 2296795 (S.D. Tex. May 30, 2019) ........................................10

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ........................................................................................19

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ..........................................................................................................9

*YETI Coolers, LLC v. Voyager Indus., Inc.*,
    No. 1:19-cv-692-RP, 2020 WL 919156 (W.D. Tex. Feb. 26, 2020) (Pitman, J.)....................13

**Rules and Statutes**

7 U.S.C. § 1a(36) ....................................................................................................................16

7 U.S.C. § 1a(47)(A) ...............................................................................................................16

7 U.S.C. § 6(a) ..........................................................................................................................3

7 U.S.C. § 6(b)(1)(A) ................................................................................................................3

7 U.S.C. § 6(b)(2)(A) ................................................................................................................3

7 U.S.C. § 6c(b) .......................................................................................................................16

7 U.S.C. § 13a-1(d)(3)(A) .......................................................................................................24

7 U.S.C. § 13a-1(d)(3)(B) .......................................................................................................24

7 U.S.C. § 13a-1(e) ..................................................................................................................14

Commodity Exchange Act.....................................................1, 2, 14, 15, 16, 17, 18, 19, 24

Fed. R. Civ. P. 8 ................................................................................................................15, 22

Fed. R. Civ. P. 9(b) .............................................................................1, 2, 15, 19, 20, 22

Fed. R. Civ. P. 12(b)(1).............................................................................................................1

Fed. R. Civ. P. 12(b)(2).......................................................................................................1, 7

Fed. R. Civ. P. 12(b)(3).............................................................................................................1,

Fed. R. Civ. P. 12(b)(6)......................................................................................................1, 15

17 C.F.R. § 32.2 .......................................................................................................................17

Defendant David Cartu respectfully moves to dismiss the Complaint (the "Complaint" or "Compl.") (ECF No. 1) filed by Plaintiff Commodity Futures Trading Commission ("CFTC") pursuant to Fed. R. Civ. P. 9(b), 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6).

## **PRELIMINARY STATEMENT**

The Complaint does not sufficiently allege personal jurisdiction, venue, or a meritorious claim against David Cartu ("David"[1]).  The CFTC broadly asserts that the "Cartu Brothers" collectively operated a "massive fraudulent 'binary options' trading scheme." (*Id.* ¶ 1.)  The Complaint, however, does not meet basic federal jurisdictional or pleading requirements as to David and should be dismissed.  As the CFTC admits, David is a foreign citizen who does not reside in the United States.  (Compl. ¶ 16.)  There is no well-pled allegation that David personally set foot in the U.S., contacted any U.S. residents, undertook any business activities in the U.S., solicited any investments from U.S. investors, or purposefully directed any activities at the U.S. or its residents in connection with the purported claims alleged in this case.  It is bedrock law that a plaintiff must establish personal jurisdiction individually as to ***each*** defendant and cannot impute alleged jurisdictional contacts of other defendants to David through conclusory group pleadings or conspiracy-based allegations.  By any measure, the allegations against David fall far short of establishing a prima facie case for personal jurisdiction, nor do they establish proper venue.

The Complaint similarly fails to allege a valid claim against David.  As a preliminary matter, David adopts by reference the arguments by Joshua and Jonathan Cartu that the Commodity Exchange Act ("CEA") – the basis for the CFTC's claims in this case – does not apply extraterritorially, as well as the arguments that any claim for disgorgement or restitution based on

---

[1] As done in the Complaint itself, this motion uses David Cartu's first name to differentiate him from his brothers Jonathan Cartu and Joshua Cartu, who are named as co-defendants in this matter and are separately represented.

conduct occurring before September 2, 2015 is time-barred, and that the disgorgement and restitution amounts sought in the Complaint exceed the CFTC's statutory authority.

The CFTC likewise does not sufficiently allege a violation of the CEA or a viable claim against David under any other theory, let alone with the particularity required under Fed. R. Civ. P. 9(b). Bald allegations that David had an equity interest in offshore companies that provided payment processing services – which again are not alleged to have occurred in the U.S. – do not demonstrate that David personally violated any U.S. commodities trading laws. The CFTC asserts that "Jonathan [Cartu] and others acting on behalf and under the direction of the Cartu Brothers[] began soliciting individuals in the United States and elsewhere to trade illegal, off-exchange binary options through" a website called "BeeOptions," which allegedly "operated out of a conference room in the offices of an Israeli-based gaming company owned by Josh and David." (*Id.* ¶ 62.) But the Complaint offers no well-pled or particularized facts showing that David himself "operated" the BeeOptions website, undertook any specific action or had any specific involvement with respect to the website, solicited any U.S. options investments, directed anyone to solicit options investments from U.S. investors, knowingly processed payments made by U.S. options purchasers, or had any specific role whatsoever in preparing or disseminating any alleged material misstatements made to U.S. investors. Nor does the CFTC comply with Rule 9(b)'s requirements that the dates, contents, and specific individuals involved in each alleged fraudulent act or misrepresentation be specified with particularity, let alone with respect to David. Control person liability is likewise not adequately asserted. The claims against David should thus be dismissed.

## **BACKGROUND**

The CFTC's Complaint broadly accuses a large group of individuals and entities of selling "binary options" under purportedly false pretenses and without obtaining U.S. registration. According to the Complaint, a binary option is essentially a "yes-no" options contract that

automatically pays the investor a predetermined amount of money on the expiration date if the investor chose the correct option, which is typically a prediction regarding the price of an asset. (*See* Compl. ¶¶ 46-50.)  If the investor made the correct prediction, they receive the payment; if not, they do not receive a payment and are out the price of the option.  (*See id.* ¶ 50.)

As the CFTC acknowledges, there is nothing inherently unlawful about binary options. Indeed, there are several CFTC-approved designated contract markets for selling binary options to U.S. retail customers.  (*See id.* ¶ 51.)  Likewise, there is nothing unlawful or actionable about simply providing payment processing services, even if the underlying options transactions were allegedly procured by misstatements, if there is no allegation that the processing services were provided with knowledge of the alleged fraud.[2]  The CFTC likewise does not and cannot allege that the U.S. commodities laws at issue in this case apply to purely foreign transactions between offshore sellers and offshore purchasers.[3]  Nor does the Complaint contain any well-pled or particularized allegation that any defendant failed to make payments that were due to investors under any specific option contract or otherwise violated the terms of any such contract.

## I.    The CFTC's Inadequate Personal Jurisdiction Allegations

The Complaint asserts claims against David Cartu, together with his brothers Jonathan Cartu and Joshua Cartu, as well as numerous other individuals and entities, including Ryan Masten, Leeav Peretz, Nati Peretz, BareIt Media LLC, Blue Moon Investments Ltd., and Orlando Union Inc.  (*See* Compl. ¶¶ 1-2, 5, 53, 56.)  The CFTC, however, does not plead a specific basis for

---

[2] *See generally In re Blech Sec. Litig.*, 961 F. Supp. 569, 584 (S.D.N.Y. 1997) (holding that "liability cannot attach when the fraudulent conduct that is alleged is no more tha[n] the performance of routine clearing functions").

[3] *See* 7 U.S.C. § 6(a), (b)(1)(A), and (b)(2)(A); *cf. Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) (noting a presumption against extraterritorial application of U.S. laws absent contrary statutory intent).

personal jurisdiction over David and admits that he is a foreign national who lives, works, and transacts business abroad, with no well-pled allegation that David set foot in the U.S., communicated with anyone in the U.S., or otherwise transacted any specific business in the U.S., let alone with respect to the purported sale of binary options. The Complaint admits that "David is a Canadian citizen" and resides outside the U.S. (*See id.* ¶ 16.)

The CFTC's allegations regarding David's purported contacts with the U.S., if any, are conclusory at best and do not meet basic federal pleading requirements. The Complaint broadly alleges that "all Defendants transacted business" in the U.S. and that "acts and practices in violation of the Act and Regulations occurred within" the U.S. (*Id.* ¶ 14.) This conclusory assertion is predicated on a series of equally conclusory assertions that Defendants, collectively, "made material misrepresentations and omissions to individuals located in the United States and elsewhere" (*id.* ¶ 3); "marketed, offered, and sold binary options to retail customers, including customers in the United States" (*id.* ¶ 53); "solicit[ed] individuals in the United States and elsewhere"; and "made decisions" or "participated in the pre-release testing of" certain trading platforms located abroad (*id.* ¶ 64, 67, 80; *see also id.* ¶¶ 1, 7, 22, 26-31, 62, 71, 84). The Complaint likewise alleges broadly that "Defendants," "Peretz Brothers," "Cartu Brothers," or some amalgamation of employees, agents, representatives, brokers, and affiliate marketers were responsible for soliciting U.S. customers. But the Complaint's discussion of the alleged solicitation and communications of U.S. customers does not mention David individually and fails to allege a single well-pled fact linking David to any options transactions by U.S. persons.

The CFTC also alleges that David at various times has "owned," "operated," and/or "controlled" a British Virgin Islands company called All Out Marketing Limited ("All Out") (*id.* ¶ 22), an Irish company called Atmosphere Management IR Ltd. (*id.* ¶ 26), another Irish company

called Greymountain Management Limited ("Greymountain") that allegedly served as a "payment processor" (*id.* ¶¶ 6, 27), a third Irish company called MegaCharge (*id.* ¶ 28), an England and Wales-incorporated company called Memox Services Ltd. (*id.* ¶ 29), an Israeli company called Tracy PAI Management Ltd. (*id.* ¶ 30), and a United Kingdom payment processing company called UKTVM Limited (*id.* ¶ 31). There is no well-pled allegation that any of these foreign companies operated in the U.S. There are likewise no well-pled allegations that David himself engaged in or personally directed any specific fraudulent or U.S.-focused conduct with respect to these or any other entities. Indeed, the Complaint does not specify David's precise involvement, if any, in day-to-day operations of each entity. While the Complaint makes conclusory allegations that Greymountain "facilitate[d] the transfer of funds from customers in the U.S. and elsewhere" (*id.* ¶¶ 6, 91), there are no specific allegations as to which transactions, if any, were actually processed for U.S. persons, let alone any well-pled facts showing that David was personally involved with the processing of any such payments or had knowledge regarding any U.S. transactions. (*See id.*)

The Complaint also asserts that "David received at least $4,868,859 from Greymountain through transfers to off-shore accounts in the name of All Out, as well as an additional $4,146,028 through transfers to off-shore accounts in the name of Memox," but again fails to specify whether any of these funds came from U.S. investors (let alone from specific, U.S.-directed conduct that David personally directed or had knowledge of). (*See id.* ¶ 7.) There is no well-pled or specific assertion that David himself marketed, offered, sold, or solicited investments from any U.S. investors, or had any specific involvement in the sale of binary options to U.S. residents.

The Complaint moreover does not appear to dispute that at all relevant times, the alleged platforms and payment processing services at issue in the Complaint were operated and maintained abroad. The CFTC alleges in conclusory fashion that MasterCard and Visa processed transactions

"for Cartu Brands on behalf of U.S. customers." (*See id.* ¶¶ 92-93.) But there are no well-pled allegations that David was personally involved in any such transactions. The Complaint defines "Cartu Brands" as including "BeeOptions," "Glenridge Capital," "Rumelia," and other unnamed "customer-facing brands" that the defendants as a group are alleged to have "owned and operated," with no specific or well-pled allegation showing David's purported involvement. (*See id.* ¶ 2.)

As noted above, the CFTC alleges that "Jonathan and others acting on behalf and under the direction of the Cartu Brothers, began soliciting individuals in the United States and elsewhere" through "the BeeOptions website." (*Id.* ¶ 62.) David is not listed by name in this allegation. The Complaint alleges that "BeeOptions operated out of a conference room in the offices of an Israeli-based gaming company owned by Josh and David" (*id.*), but fails to plead that David himself had any role in the "BeeOptions" site or whether David was even aware the site (or any other site) was purportedly used to solicit U.S. investments. The CFTC's conclusory assertions are insufficient.

## II. The CFTC's Insufficient Misrepresentations and Deception Claims

The CFTC's merits allegations fare no better. The Complaint broadly asserts that David, the other individual defendants, and various other entities, agents, and representatives engaged in fraudulent misrepresentations and deception (Counts 1 and 2) and purportedly sold options to U.S. customers that were required to have been sold on an approved exchange (Count 4). Again, the only direct references to David in regard to these purported claims appear to be as follows:

- the conclusory assertions in paragraphs 1 and 71 that "Defendants David, Jonathan, Josh, Leeav, and Nati have misrepresented the fundamental nature of the binary option transactions offered to customers on the Cartu Brands' websites and in emails, telephone calls, and other communications with customers and prospective customers" and in paragraph 80 that "David, along with Masten and Jonathan, made decisions regarding platform functionality on behalf of the Cartu Brands and participated in pre-release testing of the Cartu Platform";

- the assertions in paragraphs 5, 22, 26-31, 62, 88 that David owned or operated various trading platforms and entities incorporated and operated in foreign jurisdictions;

- the assertion in paragraph 16 that "David is a Canadian citizen and, upon information and belief, currently resides in Ontario, Canada," "lived in Israel, among other places, and frequently traveled to Ireland," and "has never been registered with the Commission in any capacity"; and

- the allegations in paragraphs 7 and 84 that the David received revenues generated by certain trading platforms and varies entities he allegedly owned and/or controlled.

There are again no specific allegations that David took concrete steps to sell binary options, let alone to individuals in the U.S. Nor are there allegations identifying specific misrepresentations or deceptive practices by David. Nor does the CFTC make any attempt to delineate David's specific role in the alleged acts. Tellingly, the only specific allegations of misrepresentations or use of manipulative or deceptive devices fail to mention David at all. For example, the CFTC alleges that "Jonathan and the Peretz Brothers mandated that Cartu Brand brokers pitch bonuses to customers as being helpful, and informed the brokers that bonuses were actually a tool to keep money in the system by preventing withdrawals and therefore increasing the brand's profits" (*id.* ¶ 76) and that "Jonathan and/or the Peretz Brothers typically approved requests to alter trading outcomes for customers of the Cartu Brand" (*id.* ¶ 79). The remainder of the allegations refer collectively to "Defendants," "Peretz Brothers," "Cartu Brothers," or some combination of employees, agents, representatives, brokers, and affiliate marketers as having allegedly made misrepresentations or utilized deceptive devices, without spelling out David's alleged role.

## ARGUMENT

## I. THE COURT LACKS PERSONAL JURISDICTION OVER DAVID

On a motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, the "Plaintiffs bear the initial burden to establish a prima facie case of specific or general jurisdiction." *Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 972 (S.D. Tex. 2018), *aff'd*, 760 F. App'x 281 (5th Cir. 2019). There are two types of personal jurisdiction: general and specific. *See Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773, 1779-80 (2017). General jurisdiction

attaches when the defendant's contacts with the forum are "continuous and systematic," while specific jurisdiction is warranted when the defendant's contacts with the forum arise from, or are directly related to, the cause of action. *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498-99 (5th Cir. 2012).

### A. The CFTC Does Not Allege "Continuous and Systemic Contacts" with the United States Sufficient for General Jurisdiction.

General jurisdiction is wholly absent. The Supreme Court has made clear that general jurisdiction is only proper where the defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)); *see also Head v. Las Vegas*, 760 F. App'x 281, 284 (5th Cir. 2019). Therefore, it is "incredibly difficult" to establish general jurisdiction over a nonresident defendant. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). The CFTC concedes David resides outside the U.S. (Compl. ¶ 16) and makes no serious effort to allege general jurisdiction.

### B. The CFTC Does Not Allege Sufficient Minimum Contacts with the United States to Establish a Basis for Specific Jurisdiction.

The Fifth Circuit applies a three-step analysis when determining whether specific jurisdiction exists: (1) "minimum contacts by the defendant purposefully directed at the forum state"; (2) "nexus between the defendant's contacts and the plaintiff's claims"; and (3) "that the exercise of jurisdiction over the defendant be fair and reasonable." *See ITL Int'l, Inc.*, 669 F.3d at 498. "[W]hen [as here] a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." *Busch v. Buchman, Buchman & O'Brien, L. Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994).

1.  **The CFTC Fails to Allege that David was Responsible for Any Purposeful Acts Aimed at the United States.**

To demonstrate minimum contacts, the CFTC must show that the claims "arise out of, or relate to," the defendant's contacts with the forum and that the defendant purposefully availed himself of the privilege of doing business in the forum and could foresee being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-75 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This "requires 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' or 'purposefully directs' its efforts toward the forum State residents." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (quoting *Burger King*, 471 U.S. at 475-76). The defendant "must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Burger King*, 471 U.S. at 475).

Additionally, a "forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Consequently, courts should discredit conclusory allegations or "vague and overgeneralized assertion[s]" that simply group defendants together. *Head*, 760 F. App'x at 284; *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("[P]laintiffs [must] submit evidence supporting personal jurisdiction over each defendant without grouping them together.").

As set forth on pages 4-8 above, the CFTC's Complaint simply lumps the defendants together with no well-pled facts regarding David's specific, purported U.S. contacts. The Complaint thus offers nothing more than the types of generalized statements that the Supreme

Court has said do not suffice to establish personal jurisdiction. In *Head v. Las Vegas Sands, LLC*, the Southern District concluded that similarly vague jurisdictional allegations were lacking and granted defendant's motion to dismiss. 298 F. Supp. 3d at 973. The court rejected the conclusory assertion that "[a]ll named defendants sent corporate jets to McAllen, Texas on numerous occasions" as "vague," "overgeneralized," and "conclusory," holding that the "plaintiff must submit evidence supporting personal jurisdiction over each defendant, and cannot simply lump them all together." *Id.*

Likewise, the allegation that some unspecified defendants maintained a website that was used by U.S. investors does not establish specific jurisdiction over David. Again, "unilateral activity" by third parties – such as investors – are insufficient to establish personal jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416-17 (1984); *Pervasive Software Inc. v. Lexware GmbH & Co. Kg*, 688 F.3d 214, 222 (5th Cir. 2012) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."). This standard applies with full force when U.S. residents allegedly access an offshore website to conduct financial transactions. *See Waraich v. Nat'l Austl. Bank Ltd.*, No. CV H-18-4069, 2019 WL 2296795, at *7 (S.D. Tex. May 30, 2019) (finding lack of personal jurisdiction over a foreign company where a U.S. person applied for and opened a trading account via the internet to trade on the foreign-exchange market); *Viahart, LLC v. Arkview LLC*, No. 6:19-cv-00406, 2020 WL 4905542, at *4 (E.D. Tex. Aug. 20, 2020) (holding that the website was relevant "only insofar as that commercial activity demonstrates purposeful targeting of residents of the forum state or purposeful availment of the benefits or privileges of the forum state"). Again, there is no specific allegation that David was involved with the websites described in the Complaint, let

alone that he made active efforts to target U.S. investors. After years of investigation, the CFTC has not alleged a single fact suggesting that David specifically directed any efforts towards the U.S.

### 2. Contacts of Agents or Co-Conspirators with the United States Cannot Be Imputed to David.

The CFTC cannot circumvent the stringent tests for establishing personal jurisdiction over David by imputing alleged contacts of corporate entities, alleged agents, or co-conspirators to him. First, the CFTC cannot simply impute alleged U.S. contacts of Greymountain or other companies to David personally (and, regardless, such contacts are not even sufficiently pled as to the companies themselves). *See Hee Sook Nam v. Tex Net, Inc.*, No. 3:20-CV-1132-S, 2021 WL 535852, at *5 (N.D. Tex. Feb. 12, 2021) (holding that corporate contacts may not be imputed to individual owners unless sufficient reasons are pled to disregard the corporate status).

Second, the CFTC's conclusory assertion that David acted through unidentified "agents," "brokers," or "marketers" is similarly unavailing. Basic agency law requires that the "evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to *control* the means and details of the process by which the agent will accomplish that task." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) (quoting *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008)). The Complaint is wholly devoid of any specific allegations reflecting that David personally directed, controlled, or caused brokers, marketers, or other third parties to solicit U.S. customers or that he had knowledge of any such activity. *See id.* (holding that an agency relationship could not establish personal jurisdiction where "there is no evidence the defendants controlled [individual's] solicitations [of Texas customers], let alone directed [individual] to solicit in Texas"); *McFadin*, 587 F.3d at 761-62 (holding that acts of a representative could not support personal jurisdiction claims where the

11

defendant did not direct the representative to sell the goods in Texas, even though the representative did so).

Third, jurisdiction may not rest solely on alleged U.S. contacts of alleged co-conspirators. *See Embarcadero Techs. Inc. v. Redgate Software Inc.*, No. 1:17–cv–444–RP, 2018 WL 315753, at *6 (W.D. Tex. Jan. 4, 2018) (Pitman, J.) (citing *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999)) (rejecting aiding and abetting theory as insufficient to confer personal jurisdiction, and citing cases holding that personal jurisdiction must be established as to each defendant individually and not merely as part of conspiracy); *Nguyen v. Phu Nguyen*, No. 4:19-CV-2229, 2020 WL 709328, at *4 (S.D. Tex. Feb. 12, 2020). The CFTC's case hinges on vague, conspiratorial claims that the defendants collectively solicited customers and made certain misrepresentations. Courts, however, have repeatedly rejected conspiracy as a basis to establish personal jurisdiction over one nonresident because of the alleged contacts of other defendants in furtherance of the alleged conspiracy. *See Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004) (citing *Guidry*, 188 F.3d at 625) (rejecting the argument that one conspirator's contacts may be automatically attributed to another, stating that a plaintiff must "demonstrate that [the conspirator-defendant] individually, and not as part of the conspiracy, had minimum contacts with Texas"); *Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 899 (S.D. Tex. 2013) ("[E]ven if a court has jurisdiction over one alleged conspirator, that fact does not confer jurisdiction over non-resident alleged co-conspirators."); *Hawkins v. Upjohn Co.*, 890 F. Supp. 601, 608-09 (E.D. Tex. 1994); *Star Tech., Inc. v. Tultex Corp.*, 844 F. Supp. 295, 299 (N.D. Tex. 1993). Thus, the CFTC's allegations that certain unspecified defendants or their agents made the alleged misstatements are not legally sufficient to establish a prima facie case of personal jurisdiction.

### 3. Exercise of Jurisdiction Over David Cartu Would Be Unfair and Unreasonable.

In addition to satisfying the minimum contacts inquiry, the CFTC must also show that the exercise of personal jurisdiction is reasonable and "does not offend the traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. The Supreme Court has articulated the following five factors to assist with its analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *Asahi Metal Indus. Co., Ltd. v. Superior. Ct. of Cal.*, 480 U.S. 102, 113-14 (1987).

That analysis further compels dismissal. David is a foreign defendant with no specific alleged ties to the U.S. *Asahi*, 480 U.S. at 103 ("[G]reat care must be exercised when considering personal jurisdiction in the international context."). This Court, the Fifth Circuit, and other courts in this circuit have rejected stronger jurisdictional allegations in other cases.[4]

---

[4] *See, e.g.*, *YETI Coolers, LLC v. Voyager Indus., Inc.*, No. 1:19-cv-692-RP, 2020 WL 919156, at *4 (W.D. Tex. Feb. 26, 2020) (Pitman, J.) (recommending dismissal even though Texas residents may have visited website and received ads), *adopted by* No. 1:19-CV-692-RP, 2020 WL 4589059 (W.D. Tex. Apr. 8, 2020); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("[T]his Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant."); *Allegiance Cap. Corp. v. Great Canadian Gaming Corp.*, No. Civ.A.3-03-CV-751-R, 2004 WL 2203256, at *4 (N.D. Tex. Sept. 30, 2004) (holding that while nonresidents communicated with forum plaintiff in fraud case, "their contacts with Texas were minimal in light of the entire sequence of events. The activities of the parties were centered in Canada and Asia, not Texas"); *Centurion Serv. Grp., LLC v. SBMC Healthcare, LLC*, 944 F. Supp. 2d 617, 623-25 (N.D. Ill. 2013) (finding no personal jurisdiction in a case involving a fraudulently obtained contract guarantee, wherein the defendants' only relevant contacts with the forum state included a single telephone call and a single email between the

## II.  THE COMPLAINT DOES NOT ADEQUATELY ALLEGE PROPER VENUE

The CFTC's venue allegations are similarly insufficient.  There is no well-pled allegation that David lives or can be found in this district, personally transacted business or conducted any act or practice in violation of the CEA in this district (or will do so), or participated in any options transactions involving district (or Texas) residents.  *See* 7 U.S.C. § 13a-1(e).  Courts routinely grant motions to dismiss when the plaintiff does not adequately plead venue as to each defendant and each claim.[5]  Merely alleging that another defendant resides in this district is insufficient to plead venue as to David.  *Tesoro Refin. & Mktg. Co., LLC v. C.A.R. Enters., Inc.*, No. SA-18-CV-820-XR, 2018 U.S. Dist. LEXIS 197032, at *19 (W.D. Tex. Nov. 19, 2018) ("[V]enue must be proper for each party . . . .").

## III.  THE CFTC HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.  The CEA Does Not Apply Extraterritorially.

David also joins in and incorporates by reference the extraterritoriality arguments raised by Joshua and Jonathan Cartu.  As set forth in their motions, the CEA contains no express provision providing for extraterritorial application.  Even if there were some authorization, the specific provisions of the CEA at issue in this case – Sections 4c(b) and 6(c)(1) – lack the required "clear statement of extraterritorial effect."  *Morrison*, 561 U.S. at 265.  Nor does the CFTC sufficiently

---

defendants' attorney and the plaintiff and the bulk of the contract negotiations occurred outside the forum state and the subject of the contractual agreement was located outside the forum state).

[5]  *See, e.g.*, *Southampton, Ltd. v. Le Norman*, No. 3:18-CV-1089-K, 2019 WL 7902959, at *4 (N.D. Tex. Sept. 3, 2019) (granting motions to dismiss for improper venue where plaintiffs addressed venue "only as Defendant groups, rather than as to each of [the] nine Defendants separately" and "neglect[ed] to address venue as to each of Plaintiffs' claims"); *Gilmour ex rel. Grantor Trs. v. Blue Cross & Blue Shield of Ala.*, No. SA-17-CA-518-FB, 2019 WL 2147580, at *9 (W.D. Tex. Mar. 6, 2019) (granting a motion to dismiss in part due to lack of venue); *see also Akurate Dynamics, LLC v. Carlisle Fluid Techs., Inc.*, No. 6:20-CV-00606-ADA, 2021 WL 860006, at *2 (W.D. Tex. Mar. 8, 2021) (granting motion to dismiss for improper venue).

allege a domestic application of the CEA.  *See Choi v. Tower Rsch. Cap. LLC*, 165 F. Supp. 3d 42, 49 (S.D.N.Y. 2016) (dismissing CEA claim involving foreign transactions).  There are no specific allegations of U.S.-focused activity by David, or any defendant, regarding the underlying binary options under Section 4c(b) or manipulation of the commodities markets under Section 6(c)(1).  The CFTC also cannot establish U.S.-focused activities using group pleadings.  For these reasons, and for the reasons set forth in Joshua and Jonathan Cartu's motions, the CEA provisions charged in the Complaint do not apply extraterritorially, and the CFTC has failed to state a claim against David.

### B.  The CFTC Has Failed to Plead Facts Plausibly Supporting Any Cause of Action as Required by Fed. R. Civ. P. 8.

The CFTC's claims are not pled with sufficient detail to survive even ordinary pleading standards.  Under Fed. R. Civ. P. 8, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-03435, 2016 WL 3745953, at *2 (S.D. Tex. July 13, 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and more than a "sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[L]umping together multiple defendants without identifying who is responsible for which acts *does not satisfy the requirements of Rule 8(a)(2) and 12(b)(6)*," let alone the particularity requirements of Rule 9(b).  *Id.* at *13 (emphasis added).

As noted above, the CFTC's allegations improperly lump all defendants together, ascribing almost all allegations to all "Defendants" as well as unnamed brokers, affiliate marketers, employees, agents, representatives, and even, on occasion, refers to the alleged actor as "they." (Compl. at ¶¶ 3, 52, 65, 74, 85.)  The CFTC fails to identify what specific acts David personally committed, if any, that violated U.S. law, or which transactions David supposedly engaged in that

were fraudulent, or which required U.S. registration[6] or use of a designated U.S. options exchange. The Complaint offers no well-pled facts showing that David made misrepresentations, participated in the making of misrepresentations, induced anyone to transact in options or swaps under false or deceptive pretenses, or is otherwise liable under any count asserted in the Complaint.

The Complaint likewise does not adequately plead that David personally transacted with U.S. purchasers in "options" or "swaps" as defined in the CEA, which further precludes liability under Counts 1, 2, and 4. *See* 7 U.S.C. § 1a(36) (defining "option," which must be alleged for Count 1); 7 U.S.C. § 1a(47)(A) (defining "swap," which must be alleged for Count 2); 7 U.S.C. § 6c(b) (reciting "commonly known to the trade as an 'option'" definition for Count 4). While "binary options" have been held subject to CFTC regulation as an instrument "commonly known to the trade" as an option,[7] and while the definition of "swap" in 7 U.S.C. § 1a(47)(A) includes options, the Complaint is again devoid of well-pled allegations demonstrating that David himself personally engaged or participated in any specific, U.S.-directed transactions with any specific instruments that meet the statutory definition of an "option" or "swap" under the CEA. There is similarly no well-pled allegation that David himself participated in the sale or transaction of any options that were required to be sold on a registered U.S. exchange, thus precluding liability under Count 4. *See* 7 U.S.C. § 6c(b) (prohibiting individuals from "offer[ing] to enter into, enter[ing]

---

[6] Count III is not asserted against David in any event.

[7] *See e.g.*, *U.S. Commodity Futures Exch. Comm'n v. Vision Fin. Partners, LLC*, 190 F. Supp. 3d 1126, 1130 (S.D. Fla. 2016). As explained in the motions filed by Jonathan and Joshua Cartu, the CEA is also unconstitutionally vague in resorting to this "commonly known to the trade" definition, which fails to provide adequate notice as to what instruments are subject to the CEA. *See U.S. v. Coleman*, 609 F.3d 699, 706 (5th Cir. 2010) ("The vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." (internal quotations omitted)). This definition, which is akin to "you will know it when you see it," does not provide sufficient notice of what the phrase is actually intended to mean.

into or confirm[ing] the execution of, any transaction involving any commodity regulated under this chapter which is of the character of, or is commonly known to the trade as, an 'option'"); 17 C.F.R. § 32.2 (making it unlawful "for any person or group of persons to offer to enter into, enter into, confirm the execution of, maintain a position in, or otherwise conduct activity related to any transaction in interstate commerce that is a commodity option transaction"). Further, as noted in the extraterritoriality argument, the CFTC cannot claim that purely foreign transactions are subject to CFTC regulation, must be traded on a U.S. exchange, or otherwise violate the CEA.

The CFTC likewise offers no well-pled facts showing that David is a control person. To establish control person liability under Section 13c(b), the CFTC must allege that the individual: (1) had control over an entity alleged to be liable and (2) lacked good faith or knowingly induced the acts constituting the violation. *See U.S. Commodity Futures Trading Comm'n v. McDonnell*, 332 F. Supp. 3d 641, 723 (E.D.N.Y. 2018); *U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, 1 F. Supp. 3d 1311, 1322 (S.D. Fla. 2014).

As a preliminary matter, the CFTC has abandoned its primary liability claim against All Out, the entity Cartu purportedly controlled. (*See* ECF No. 53; Compl. ¶ 97.) Because the CFTC has dismissed its claims against All Out, and because the allegations against All Out are similarly conclusory and fail to establish a primary claim against them in any event, the control person claim against David also fails. *See Choi*, 162 F. Supp. 3d at 50 n.7 ("Because the Complaint fails to adequately state a claim for relief under the CEA, the claims against Mr. Gorton predicated upon aiding and abetting and control person liability necessarily fail as well"). The allegations also fail to show that David controlled any other alleged primary violator (or even that a primary violation was committed by anyone) or "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, even if such power was not exercised."

*U.S. Commodity Futures Trading Comm'n v. Kratville*, 796 F.3d 873, 894 (8th Cir. 2015). Nor has the CFTC adequately alleged that David failed to act in good faith or that he knowingly induced any violations of the CEA. *See U.S. Commodity Futures Trading Comm'n v. Total Call Grp., Inc.*, No. 4:10-cv-00513-RAS-DDB, 2012 WL 1642196, at *10 (E.D. Tex. Mar. 30, 2012) (noting that the CFTC "has the burden here of establishing that the controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation" (internal quotations omitted)). To establish lack of good faith, the CFTC must show that the individual failed to maintain a "reasonably adequate system of internal supervision and control" or did not oversee the system "with any reasonable diligence." *Hunter Wise Commodities, LLC*, 1 F. Supp. 3d at 1323; *U.S. Commodity Futures Trading Comm'n v. Johnson*, 408 F. Supp. 2d 259, 269 (S.D. Tex. 2005). The complaint lacks any well-pled allegations about supervision, control, or reasonable diligence, let alone any allegations detailing David's involvement. Nor has the CFTC adequately alleged that David "had actual or constructive knowledge of the core activities that make up the violation[s] at issue and allowed them to continue." *Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1334 (11th Cir. 2002).

In sum, Plaintiffs have failed to offer well-pled allegations that David personally engaged in, participated in, or induced any transactions with any U.S. investors (or, for that matter, any investors outside the U.S.) that involved misrepresentations, deceptive conduct, or any specific instruments that are regulated under the CEA or required to be traded on a CFTC-approved exchange. The allegations are "devoid of any 'further factual enhancement'" with respect to David's purported culpability or role and do not suffice. *Del Castillo*, 2016 WL 3745953, at *13 (quoting *Iqbal*, 556 U.S. at 678).

## C. The CFTC Has Failed to Plead Fraud with Particularity as Required by Rule 9(b).

The CFTC's allegations likewise do not come close to satisfying the more stringent particularity requirements of Fed. R. Civ. P. 9(b). Because all of the CFTC's claims are predicated on the underlying assertion that the defendants operated a "fraudulent" trading scheme, and because that allegation is expressly incorporated into all counts of the Complaint, all of the CFTC's claims are subject to Rule 9(b).[8]

To satisfy Rule 9(b), the CFTC must provide "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *U.S. Commodity Futures Trading Comm'n v. Growth Cap. Mgmt., LLC*, No. 3:10-CV-1473-B, 2011 WL 880429, at *3 (N.D. Tex. Mar. 11, 2011) (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also U.S. Commodity Futures Trading Comm'n v. M25 Invs. Inc.*, No. 3:09-CV-1831-M, 2010 WL 769367, at *2 (N.D. Tex. Mar. 6, 2010) ("The rule is interpreted strictly as requiring plaintiffs to identify the alleged fraudulent statements and the speaker, state the time and place of the statements, and explain how or why they were fraudulent.").

Similarly, a fraudulent manipulation or fraud claim under the CEA will only survive if it sets forth "what manipulative acts were performed, which defendants performed them, when the

---

[8] *See* Compl. ¶¶ 1, 8, 9, 112 (incorporating all allegations into failure-to-register claim), 119 (incorporating all allegations into off-exchange options claim). Indeed, Plaintiffs allege that "Defendants engaged in fraudulent activity at each stage of a typical binary option transaction." (Compl. ¶ 52). When a plaintiff incorporates allegations of fraud into claims that do not inherently require allegations of fraudulent conduct, Rule 9(b) applies to those claims. *See Brown v. Bilek*, 401 F. App'x 889, 893 (5th Cir. 2010) (applying Rule 9(b) to fiduciary duty claims "predicated on fraud"); *Off. Stanford Invs. Comm. v. Greenberg Traurig, LLP*, No. 3:12-CV-4641-N, 2015 WL 13741905, at *1-2, *6 (N.D. Tex. Feb. 4, 2015) (applying Rule 9(b) to unregistered securities claims); *see also Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

manipulative acts were performed, and what effect the scheme had on the market for the commodities at issue." *See U.S. Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.*, 153 F. Supp. 3d 996, 1012 (N.D. Ill. 2015).

Counts 1 and 2 also require scienter, which requires that the CFTC "'set forth specific facts to support an inference of fraud.'" *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (quoting *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996)); *M25 Invs. Inc.*, 2010 WL 769367, at *3 (holding that the CFTC did not plead scienter because plaintiffs may "not plead scienter against a general group").

This Court has rigorously applied Rule 9(b) in dismissing other fraud-based claims that were similarly lacking in detail.[9] The Fifth Circuit "applies 'Rule 9(b) to fraud complaints with bite and without apology.'" *Liberty Bankers Life Ins. Co. v. Lenhard*, No. 3:16-CV-02417-N, 2018 U.S. Dist. LEXIS 144745, at *14 (N.D. Tex. Apr. 9, 2018) (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009)); *Herrmann Holdings Ltd.*, 302 F.3d at 564 ("This Court interprets Rule 9(b) strictly.").

The CFTC's allegations violate Rule 9(b) in virtually every respect. The Complaint fails to provide the "who, what, when, where, and how" with respect to a single alleged misstatement or improper act by David. The Complaint contains no particularized allegations specifically linking David to any actionable fraudulent representations, omissions, or deceptive acts directed

---

[9] *See, e.g.*, *Nicholas v. Ameris Bank*, No. 1:20-CV-1054-RP, 2021 WL 2953164, at *5 (W.D. Tex. June 8, 2021) (Pitman, J.) (dismissing fraud claims where complaint did "not identify a speaker, state where any fraudulent or misleading statements were made, or specifically describe how these statements were false"); *MWK Recruiting, Inc. Jowers v. Couns. Unlimited LLC*, No. 1:18-CV-444-RP, 2020 WL 7229977, at *7 (W.D. Tex. Dec. 8, 2020) (Pitman, J.) (dismissing claim under Rule 9(b) where complaint "offers only vague time frames" and did not specify where or when alleged misstatements occurred); *Bradford v. Nationwide Ins. Co. of Am.*, No. 1:17-CV-1067-RP, 2018 WL 2452971, at *3 (W.D. Tex. May 31, 2018) (dismissing fraud claim where complaint provided no "details about when and where such a statement was made").

at the U.S. or to any specific persons within the U.S. The CFTC fails to identify specific documents, communications, or acts directed at U.S. persons, let alone, communications that contain specific false or misleading representations or acts by David. Nor does the CFTC identify where or when such communications or acts occurred and what specific role David had with respect to each such communication or act (or even that David had any role in preparing materials or other communications pertaining to the alleged binary options scheme). There is likewise no specific allegation that David knew of any fraudulent acts by other defendants or knowingly received funds derived from improper conduct.

Instead, the Complaint alleges in conclusory fashion that David, among multiple other named and unnamed individuals, owned and operated various entities, all of which were incorporated abroad, and that he played some unstated role in "soliciting and selling binary options." There are no particularized allegations showing that David personally solicited or sold options to individuals in the U.S. or played any specific role with respect to any specific alleged misstatements, omissions, or deceptive acts. The CFTC resorts to vague claims that the defendants as a group "directed" or acted "in concert with" others in furtherance of the alleged fraud and attributes oblique misrepresentation, omissions, and acts globally to all "Defendants" as well as unnamed brokers, affiliate marketers, employees, agents, representatives, and even, on occasion, refers to the alleged speaker as "they." (Compl. at ¶¶ 3, 52, 65, 74, 85.) These group-pled allegations are patently insufficient to allege any element of a fraud-based claim, including scienter. *See M25 Invs. Inc.*, 2010 WL 769367, at *3 (finding that the CFTC "used improper group pleading that fail[ed] to adequately connect the who and the what" and emphasizing that plaintiffs may "not plead scienter against a general group"); *see also Southland Secs. Corp. v. INSpire Ins.*

*Sols., Inc.*, 365 F.3d 353, 364-65 (5th Cir. 2004) (rejecting "group pleading"). The CFTC's indiscriminate grouping of defendants and various third parties does not comply with Rule 9(b).

The allegations are likewise insufficient because they are not particularized as to time. Inclusion of only generalized time frames and loose references to a generalized alleged scheme by all Defendants without any specificity is insufficient to survive a motion to dismiss. *See MWK Recruiting, Inc. Jowers v. Couns. Unlimited LLC*, No. 1:18-CV-444-RP, 2020 WL 7229977, at *7 (Pitman, J.) (dismissing the claim under Rule 9(b) where complaint "offer[ed] only vague time frames" and did not specify where or when alleged misstatements occurred); *U.S. Commodity Futures Trading Comm'n v. Giddens*, No. 1:11-cv-2038-WSD, 2012 WL 603592, at *5 (N.D. Ga. Feb. 24, 2012) (holding as "plainly insufficient under Rule 9(b) . . . the general allegation that the scheme occurred between January and October 2010, [where] there [was] no indication of the time these statements occurred, where they occurred, in what manner the statements were transmitted, or to whom they were made"); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("[L]oose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do." (quoting *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1516 (N.D. Ill. 1990))). These allegations are patently insufficient under Rule 9(b) (and, for that matter, under Rule 8).

The CFTC also fails to allege particularized facts showing that David acted with scienter, which again may not be alleged on a group-pled basis. *See M25 Invs. Inc.*, 2010 WL 769367, at *5 ("To adequately plead scienter, the Commission must allege specific facts to support an inference of fraud"); *Herrmann Holdings Ltd.*, 302 F.3d at 564-65; *Lovelace*, 78 F.3d at 1018. The CFTC's broad allegation that David and others "made decisions regarding platform functionality" is insufficient to support an inference that David recklessly or intentionally utilized manipulative

or deceptive devices. David's alleged ownership and operation of the payment processing service Greymountain, an entity incorporated in Ireland, is also insufficient to support an inference of fraud. The CFTC does not allege that David or Greymountain initiated or directed specific transactions and appears to allege that David should be liable because Greymountain performed payment processing services. But simply assisting with routine backend processing of transactions does not amount to fraud, any more than providing other routine office support services. *See generally In re Blech Sec. Litig.*, 961 F. Supp. 569, 584 (S.D.N.Y. 1997) (holding that "liability cannot attach when the fraudulent conduct that is alleged is no more tha[n] the performance of routine clearing functions"). Vague allegations that David and other defendants or entities were collectively involved in making decisions about platform "functionality" or payment processing – activities that are not inherently unlawful and are not pled with particularity in any event – cannot substitute for particularized allegations that David personally knew of and participated in fraudulent conduct. Further, as stated above, the Complaint fails to allege any well-pled (let alone particularized) allegations that David participated in options transactions (or controlled any entity participating in such transactions) that were required to be conducted on an approved exchange, thus precluding Count 4. The claims against David thus fail in their entirety.

## IV. THE REQUEST FOR DISGORGEMENT AND RESTITUTION SHOULD BE DISMISSED OR LIMITED

David also joins in and incorporates by reference the grounds for dismissal asserted by Joshua and Jonathan Cartu with respect to the CFTC's requests for restitution and disgorgement. As pled in the Complaint, these remedies are punitive and are therefore subject to a five-year statute of limitations. *See U.S. Commodity Futures Trading Comm'n v. Gramalegui*, No. 15-cv-02313, 2018 WL 4610953, at *30 (D. Colo. Sept. 26, 2018) (citing *Kokesh v. SEC*, 137 S. Ct. 1635, 1639 (2017)) (applying a five-year statute of limitations to CFTC restitution claim). The

CFTC thus cannot recover restitution and disgorgement for conduct occurring before September 2, 2015, five years before this suit was filed.

The Court should also dismiss the Complaint – regardless of when the alleged conduct occurred – to the extent it oversteps the CFTC's statutory authority to obtain disgorgement and restitution. The CEA does not authorize broad disgorgement of "all benefits received," as the CFTC improperly seeks, but instead authorizes only "disgorgement of *gains* received in connection with [the CEA] violation." 7 U.S.C. § 13a-1(d)(3)(B) (emphasis added); *see also Liu v. SEC*, 140 S. Ct. 1936, 1940-41 (2020) (limiting disgorgement in SEC enforcement proceedings to net profits). The CEA likewise does not authorize "full restitution" as sought by the CFTC in this case, but only restitution to persons "who have sustained losses *proximately caused* by such violation (in the amount of such losses)[.]" 7 U.S.C. § 13a-1(d)(3)(A) (emphasis added).

Accordingly, the Court should dismiss the Complaint to the extent it seeks relief from David in the form of: (i) disgorgement or restitution for alleged CEA violations occurring before September 2, 2015 (five years before the date of the filing of the current complaint); (ii) disgorgement for anything other than proven net profits; or (iii) restitution to anyone whose losses were not proximately caused by the alleged CEA violations.

## CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint against David.

Dated: February 7, 2022                    Respectfully submitted,

                                           /s/ *Peter A. Stokes*
                                           Peter A. Stokes
                                           State Bar No. 24028017
                                           peter.stokes@nortonrosefulbright.com
                                           98 San Jacinto Boulevard, Suite 1100
                                           Austin, Texas 78701-4255
                                           Telephone: (512) 474-5201
                                           Facsimile: (512) 536-4598

                                           Kevin Harnisch (*Admitted Pro Hac Vice*)
                                           kevin.harnisch@nortonrosefulbright.com
                                           799 9th Street NW
                                           Washington, DC 20001-4501
                                           Telephone: (202) 662-4520
                                           Facsimile: (202) 662-4643

                                           Katey L. Fardelmann (*Admitted Pro Hac Vice*)
                                           katey.fardelmann@nortonrosefulbright.com
                                           1301 Avenue of the Americas
                                           New York, New York
                                           Telephone: (212) 318-3226
                                           Facsimile: (212) 318-3400

                                           *Attorneys for Defendant David Cartu*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on February 7, 2022, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

/s/ Peter A. Stokes