IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | | |
| Plaintiff, | | |
| v. | | |
| DAVID CARTU, JONATHAN CARTU, JOSHUA CARTU, RYAN MASTEN, LEEAV PERETZ, NATI PERETZ, ALL OUT MARKETING LIMITED, BAREIT MEDIA LLC D/B/A SIGNALPUSH, BLUE MOON INVESTMENTS LTD., AND ORLANDO UNION INC., | | 1:20-CV-908-RP |
| Defendants. | | |

**DEFENDANT JONATHAN CARTU'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2), (b)(3), AND (b)(6)**

**SPIRO HARRISON**
David B. Harrison
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
dharrison@spiroharrison.com

*Attorneys for Defendant
    Jonathan Cartu*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 2

LEGAL ARGUMENT............................................................................................................ 4

    I.      THIS COURT LACKS PERSONAL JURISDICTION OVER JONATHAN. .............. 4

      A.  The CFTC Fails to Sufficiently Allege That Jonathan Was Responsible for Any Conduct Expressly Aimed at the United States. ................................................................. 6

      B.  Jonathan's Alleged Operation of Platform Websites Do Not Support a Finding that This Court Has Personal Jurisdiction.................................................................................. 10

      C.  The Exercise of Jurisdiction Over Jonathan Would Be Unreasonable. ......................... 12

    II.     THE WESTERN DISTRICT OF TEXAS IS AN IMPROPER VENUE AS TO JONATHAN ............................................................................................................ 14

    III.    THE CFTC HAS FAILED TO STATE A CLAIM AGAINST JONATHAN. ............ 14

      A.  The CFTC Has Failed to Satisfy the Requirements of Rules 8 and 9(b). ...................... 15

      B.  The CFTC Has Failed to Plead Fraud with Particularity as Required by Rule 9(b). ...... 16

      C.  The CFTC Has Failed to State a Claim Upon Which Relief Can Be Granted.............. 20

            1.    The CEA Does Not Apply Extraterritorially................................................. 20

            2.    The Complaint Does Not Adequately Plead the Elements of Counts 1, 2, and 4 Against Jonathan Cartu. .................................................................................... 21

            3.    The Complaint Does Not Adequately Allege that Jonathan is a Control Person or that He Should Be Held Jointly and Severally Liable. ............................... 22

    IV.    THE PRAYER OF RELIEF IN THE FORMS OF DISGORGEMENT AND RESTITUTION SHOULD BE DISMISSED. .......................................................... 22

CONCLUSION.................................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*,
  480 U.S. 102 (1987).............................................................................................. 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................... 14, 15

*AT&T Co. v. Compagnie Bruxelles Lambert*,
  94 F.3d 586 (9th Cir. 1996) .................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................... 14, 15

*Bellaire Gen Hosp. v. Blue Cross Blue Shield*,
  97 F.3d 822  (5th Cir. 1996) ................................................................................... 5

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
  343 F.3d 719 (5th Cir. 2003) ................................................................................ 16

*Bradford v. Nationwide Ins. Co. of Am.*,
  No. 1:17-CV-1067-RP, 2018 U.S. Dist. LEXIS 90599 (W.D. Tex. May 31, 2018) ............... 17

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017)............................................................................................ 4

*Brown v. Bilek*,
  401 F. App'x 889 (5th Cir. 2010) .......................................................................... 16

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).......................................................................................... 6, 13

*Busch v. Buchman, Buchman & O'Brien, Law Firm*,
  11 F.3d 1255 (5th Cir. 1994) .................................................................................. 5

*CFTC v. Giddens*,
  No. 1:11-cv-2038-WSD, 2012 U.S. Dist. LEXIS 23728 (N.D. Ga. Feb. 24, 2012) ............... 19

*CFTC v. Gramalegui*,
  No. 15-cv-02313-REB-GPG, 2018 U.S. Dist. LEXIS 165315 (D. Colo. Sept. 26, 2018) ....... 23

*CFTC v. Growth Cap. Mgmt., LLC*,
  No. 3:10-CV-1473-B, 2011 U.S. Dist. LEXIS 25424 (N.D. Tex. Mar. 11, 2011)................... 16

*CFTC v. Kraft Foods Grp., Inc.*,
  153 F. Supp. 3d 996 (N.D. Ill. 2015) .................................................................... 17

*CFTC v. M25 Invs. Inc.*,
  No. 3:09-CV-1831-M, 2010 U.S. Dist. LEXIS 20557 (N.D. Tex. Mar. 6, 2010)........ 16, 17, 19

*CFTC v. TFS-ICAP, LLC*,
  415 F. Supp. 3d 371 (S.D.N.Y. 2019) ............................................................... 7, 9

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
  399 F.3d 651 (6th Cir. 2005) .................................................................................. 8

*Del Castillo v. PMI Holdings North America Inc,*
   No. 4:14-CV-03435, 2016 WL 3745953 (S.D. Tex. July 13, 2016) ............................ 15, 16, 20

*Driving Force Techs., Inc. v. Panda Distrib., Inc.,*
   No. 4:10-cv-24, 2012 U.S. Dist. LEXIS 65696 (E.D. Tex. May 10, 2014) ............................... 8

*Fintech Fund, F.L.P. v. Horne,*
   836 F. App'x 215 (5th Cir. 2020) ............................................................................................. 13

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   564 U.S. 915 (2011)..................................................................................................................... 4

*GreatFence.com, Inc. v. Bailey,*
   726 F. App'x 260 (5th Cir. 2018) ............................................................................................. 10

*Henneberger v. Ticom Geomatics, Inc.,*
   No 1:18-CV-134-RP, 2018 U.S. Dist. LEXIS 222876 (W.D. Tex. Dec. 12, 2018)................... 6

*Herrmann Holdings Ltd. v. Lucent Technologies Inc.,*
   302 F.3d 552 (5th Cir. 2002) .................................................................................................... 17

*Johnston v. Multidata Sys. Int'l Corp.,*
   523 F.3d 602 (5th Cir. 2008) ................................................................................................ 4, 13

*Kokesh v. SEC,*
   137 S. Ct. 1653 (2017)............................................................................................................... 23

*Liberty Bankers Life Ins. Co. v. Lenhard,*
   No. 3:16-CV-02417-N, 2018 U.S. Dist. LEXIS 144745 (N.D. Tex. Apr. 9, 2018) ................ 17

*Liu v. SEC,*
   140 S. Ct. 1936 (2020)............................................................................................................... 23

*Lovelace v. Software Spectrum Inc.,*
   78 F.3d 1015 (5th Cir. 1996) .................................................................................................... 17

*LULAC v. Texas,*
   No. 5:15-CV-00219-RP, 2015 U.S. Dist. LEXIS 69514 (W.D. Tex. May 29, 2015) .............. 15

*Luv n' Care, Ltd. v. Insta-Mix, Inc.,*
   438 F.3d 465 (5th Cir. 2006) ...................................................................................................... 6

*Martone v. Robb,*
   No. 1:14-CV-877 RP, 2017 U.S. Dist. LEXIS 122014 (W.D. Tex. Aug. 2, 2017)................. 15

*McFadin v. Gerber,*
   587 F.3d 753 (5th Cir. 2009) ................................................................................................. 5, 6

*Monkton Ins. Servs v. Ritter,*
   768 F.3d 429 (5th Cir. 2014) ...................................................................................................... 4

*MWK Recruiting, Inc. Jowers v. Counsel Unlimited LLC,*
   No. 1:18-CV-444-RP, 2020 U.S. Dist. LEXIS 229755 (W.D. Tex. Dec. 8, 2020)........... 17, 19

*Nicholas v. Ameris Bank,*
   No. 1:20-CV-1054-RP, 2021 U.S. Dist. LEXIS 133210 (W.D. Tex. June 8, 2021) ............... 17

*Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP,*
   No. 3:12-CV-4641-N, 2015 U.S. Dist. LEXIS 199175 (N.D. Tex. Feb. 4, 2015) .................. 16

*Panda Brandywine Corp. v. Potomac Electric Power Co.*,
   253 F.3d 865 (5th Cir. 2001) ................................................................... 6
*Pervasive Software, Inc. v. Lexware GMBH & Co. KG*,
   688 F.3d 214 (5th Cir. 2012) ...................................................... 10, 11, 12
*Plotkin v. IP Axess, Inc.*,
   407 F.3d 690 (5th Cir. 2005) ................................................................. 16
*Reno v. Am. Civil Liberties Union*,
   521 U.S. 844 (1997) ............................................................................. 10
*Revell v. Lidov*,
   317 F.3d 467 (5th Cir. 2002) ................................................................. 10
*Sangha v. Navig8Shipmanagement Private Ltd.*,
   882 F.3d 96 (5th Cir. 2018) ............................................................... 6, 13
*Sefton v. Jew*,
   201 F. Supp. 2d 730 (W.D. Tex. 2001) ..................................................... 8
*Seiferth v. Helicopteros Atuneros, Inc.*,
   472 F.3d 266 (5th Cir. 2006) ............................................................... 5, 6
*Sullivan v. Bayclays PLC*,
   No. 13-cv-2811 (PKC), 2017 U.S. Dist. LEXIS 25756 (S.D.N.Y. Feb. 21, 2017) ................... 9
*United States ex rel. Grubbs v. Kanneganti*,
   565 F.3d 180 (5th Cir. 2009) ................................................................. 17
*Vecron Exim, Ltd. v. EPO Logistics, Inc.*,
   No. H-18-2394, 2019 U.S. Dist. LEXIS 77586 (S.D. Tex. May 8, 2019) ................................. 6
*Waraich v. Nat'l Austl. Bank Ltd.*,
   No. H-18-4069, 2019 U.S. Dist. LEXIS 90458 (S.D. Tex. May 30, 2019) ...................... 11, 12
*Williams v. Reliance Std. Life Ins. Co.*,
   No. 20-5036, 2021 U.S. Dist. LEXIS 162276 (E.D. Pa. Aug. 27, 2021) ................................ 5
*Williams v. WMX Techs., Inc.*,
   112 F.3d 175  (5th Cir. 1997) ............................................................... 16
*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
   952 F. Supp. 1119 (W.D. Pa. 1997) .................................................... 10, 11

**Statutes**

7 U.S.C. § 13a-1(d)(3)(A) ......................................................................... 23
7 U.S.C. § 13a-1(d)(3)(B) ......................................................................... 23
7 U.S.C. § 13a-1(e) .............................................................................. 5, 14
7 U.S.C. § 1a(36) ................................................................................. 21

**Rules**

Fed. R. Civ. P. 12(b)(2) ............................................................................. 1
Fed. R. Civ. P. 12(b)(3) ............................................................................. 1
Fed. R. Civ. P. 12(b)(6) .................................................................... 1, 14, 15
Fed. R. Civ. P. 8 ...................................................................................... 15

Fed. R. Civ. P. 9(b) ............................................................................................................ passim

**Regulations**

17 C.F.R. § 32.2 ...................................................................................................................... 21

Defendant Jonathan Cartu[1] respectfully submits this memorandum of law in support of his motion to dismiss Plaintiff Commodity Futures Trading Commission's ("CFTC") Complaint for Injunctive Relief, Civil Monetary Penalties, and Other Equitable Relief (the "Complaint") pursuant to Fed. R. Civ. P. 9(b), 12(b)(2), 12(b)(3), and 12(b)(6).

## PRELIMINARY STATEMENT

In this matter, the CFTC seeks to hold a foreign defendant liable for alleged conduct of others through a variety of vague, amorphous allegations that are woefully insufficient.  Jonathan Cartu is a Canadian citizen living in Israel, who has is not alleged to have stepped foot in the United States nor attempted to conduct business here.  The conduct alleged in the Complaint does not purport to establish that Jonathan had any contact with this District or the U.S. more generally except to the extent that certain nontargeted conduct by entities he allegedly controlled incidentally reached U.S. customers.  The CFTC has failed to establish that this Court has personal jurisdiction over Jonathan or that this District is the proper venue.

In addition to these fatal jurisdictional deficiencies, the CFTC's broad, group-pled allegations against Jonathan and his brothers fail to meet the heightened pleading standard.  The Complaint makes broad allegations of wrongdoing by Jonathan and his co-defendants but fails to support such allegations with the requisite detail, or any detail whatsoever.   The CFTC seeks to overcome its shortcomings by asserting that the wrongdoing was by agents, brokers, or "at the direction of" Jonathan and his co-defendants, but fails to identify these agents, the nature of the "direction," or the timing of these so-called directives that resulted in the alleged wrongdoing.  Instead, the Complaint repeatedly ascribes wrongdoing to swaths of defendants without any

---

[1] Like the Complaint, this motion will refer to Jonathan by his first name to avoid confusion with his brothers, who are named as co-defendants in this matter.

attempt to provide the Defendants or this Court with the specificity necessary to discern meritorious claims from meritless claims.  The group-pled allegations lack specific times, specific actors, and specific conduct that supposedly took place.  The Complaint does not identify a single specific fraudulent transaction or specific customers who were victims of the purported fraud. Instead, the Complaint repetitively describes the basic outline of a scheme without providing any detail whatsoever about how the scheme was implemented by each of the individually identified defendants.  These broad allegations fall well-short of the well-established pleading standards in this District.

But even looking past these insurmountable deficiencies, the Commodity Exchange Act does not provide the CFTC with purely extraterritorial enforcement capabilities that would permit them to move forward.  As alleged by the CFTC, Jonathan, the entities he purportedly owned, as well as the employees of those entities, existed and conducted business entirely outside of the U.S. The mere fact that some conduct indirectly reached U.S. customers does not provide the CFTC with the requisite jurisdictional hook.  And finally, the CFTC seeks a remedy beyond that to which it is statutorily entitled.

Based on the foregoing, and as described in more detail below, the Complaint is devoid of facts sufficient to support the jurisdiction of this Court and fails to allege specific facts sufficient to support the CFTC's claims against Jonathan. The Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

According to the Complaint, beginning in or before May 1, 2013, and through at least April 29, 2018 (the "Relevant Period"), the Cartu Brothers, as well as Leeav and Nati Peretz (collectively

the "Peretz Brothers"), operated a binary option[2] trading platform. (Compl. ¶ 1-2.) The Cartu Brothers and the Peretz Brothers utilized a series of websites and brands to operate the binary option trading platform, including BeeOptions, Glenridge Capital, and Rumelia (collectively the "Cartu Brands"). (*Id.* ¶ 2.) The binary options themselves were purportedly executed on a trading platform operated by the Cartu Brothers and Ryan Masten, and operated through All Out Marketing Limited, Blue Moon Investments, Ltd. (Blue Moon),[3] and Orlando Union Inc. (collectively the "Cartu Platform"). (*Id.* ¶ 5.) An entity seeking to offer binary options to U.S. citizens must be authorized as a designated contract market ("DCMs"). (*See id.* ¶ 51.) The Cartu Platform was not one of the three DCMs authorized to transact with U.S. customers. (*See id.*)

The Complaint addresses a panoply of defendants and alleged conduct, including solicitation, misrepresentation, fraud, and illegal commodity sales, a majority of which is group pled against "Defendants" or "the Cartu Brothers." The allegations directly concerning Jonathan are few:

- "Jonathan, and others acting on behalf of and under the direction of the Cartu Brothers, began soliciting individuals in the United States and elsewhere." (*Id.* ¶ 62.)

- "Jonathan sent an email to BeeOptions brokers and other employees of Defendants" seeking to expand business and stating that their "fortunes will not rest on one far away company doing unregulated business forever." (*Id.* ¶ 69.)

- "David, Jonathan, Leeav, and Nati, have misrepresented the fundamental nature of the binary options transactions offered to customers." (*Id.* ¶ 71.) Unnamed brokers allegedly conducted this misrepresentation. (*Id.* ¶ 72.)

- "Jonathan and the Peretz Brothers mandated that Cartu Brand Brokers pitch bonuses to customers as being helpful" when they were not. (*Id.* ¶ 76.)

---

[2] The Complaint alleges that a binary option is "a type of options contract in which the payment depends entirely on the outcome of a discrete event—typically a 'yes/no' proposition," (Compl. ¶ 46,) and can "involve a variety of underlying assets," but "does not give the holder the right to purchase or sell the underlying asset." (*id.* ¶ 50.)

[3] The CFTC alleges that Blue Moon, a Seychelles entity, was "owned and controlled" by Jonathan. (*Id.* ¶¶ 5, 24.)

- "Jonathan and/or the Peretz Brothers typically approved requests to alter trading outcomes" sometime within the Relevant Period. (*Id.* ¶ 79.)

- Jonathan, along with David and Masten, "made decisions regarding [the Cartu P]latform functionality…and participated in pre-release testing of the Cartu Platform." (*Id.* ¶ 80.)

- Jonathan, along with his brothers and Masten, "shared revenues generated by the Cartu Platform." (*Id.* ¶ 84.)

- "[B]rokers, as well as other employees acting on behalf of the Cartu Brands and at the direction of Jonathan or the Peretz Brothers, among others, falsely represented to…customers that their funds were held in regulated financial institutions." (*Id.* ¶ 85.)

As to each of these allegations, the CFTC has barely even attempted to direct them at Jonathan individually, repeatedly casting a wide net through group pleading, virtually ignoring the pleading standards under the federal rules altogether.

## LEGAL ARGUMENT

### I.   THIS COURT LACKS PERSONAL JURISDICTION OVER JONATHAN.

The U.S. Supreme Court has recognized two types of personal jurisdiction: general and specific. *See, e.g., Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779 (2017). However, on the face of the CFTC's Complaint, it has failed to establish that this Court has jurisdiction over the Cartu Brothers under either formulation of personal jurisdiction.

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile…." *Id.* at 1780. A defendant's "affiliations" with the forum must be "so continuous and systematic as to render [it] essentially at home in the forum." *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Vague allegations "that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008). The Complaint utterly fails to allege general jurisdiction. As even the CFTC concedes, none of the Cartu Brothers resided

in in the U.S. during the Relevant Period or thereafter, nor could their virtually non-existent contacts with the U.S. be reasonably considered so continuous and systematic as to render the Cartu Brothers "essentially at home" here.

      The Complaint's allegations regarding specific jurisdiction are equally unavailing.  In order for this Court to exercise specific jurisdiction, it must determine:

> (1) whether the defendant has minimum contacts with the forum…i.e., whether it purposely directed its activities toward the forum…or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of the result of the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).  The Commodity Exchange Act ("CEA") provides for nationwide service of process.  *See* 7 U.S.C. § 13a-1(e) (service authorized "wherever the defendant may be found").  As a result, in analyzing whether a court may exercise personal jurisdiction over a defendant "the relevant inquiry is whether the defendant has had minimum contacts with the United States."  *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994).[4]

---

[4] In *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 826 (5th Cir. 1996), the Fifth Circuit "dutifully appli[ed] *Busch*," but noted its "grave misgivings" in doing so.  The *Bellaire* Court expressed concern regarding the conflation of the national service of process statute with the personal jurisdiction analysis such that the relevant forum is transformed into the United States, and "fail[ed] to apprehend how personal jurisdiction can be separated from due process by Congressional enactment of nationwide service of process provisions." *Id.*  As one court recently explained, the foundations of this approach have been undermined by recent Supreme Court decisions and fails to treat venue and jurisdiction as separate and legally distinct determinations. *Williams v. Reliance Std. Life Ins. Co.*, No. 20-5036, 2021 U.S. Dist. LEXIS 162276, at *7-8 (E.D. Pa. Aug. 27, 2021).  The CFTC has failed to allege any conduct in Texas which would support the exercise of specific jurisdiction.

The "minimum contacts" inquiry is a fact sensitive one, meant to ensure that a defendant's conduct demonstrates that he "reasonably anticipates being haled into court." *McFadin*, 587 F.3d at 759 (internal quotations omitted). This inquiry consists of three parts. *Vecron Exim, Ltd. v. XPO Logistics, Inc.*, No. H-18-2394, 2019 U.S. Dist. LEXIS 77586, at *6 (S.D. Tex. May 8, 2019). "First, only the defendant's contacts with the forum are relevant, not the unilateral activity of the plaintiff or a third party." *Id.* (citing *Sangha v. Navig8Shipmanagement Private Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018)). "Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated." *Id.* at *6-7 (citing *Sangha*, 882 F.3d at 103). And finally, "the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction." *Id.* at *7 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

The CFTC bears the burden of establishing personal jurisdiction. *Seiferth*, 472 F.3d at 270. This Court "need not credit conclusory allegations, even if uncontroverted." *Henneberger v. Ticom Geomatics, Inc.*, No 1:18-CV-134-RP, 2018 U.S. Dist. LEXIS 222876, at *5 (W.D. Tex. Dec. 12, 2018) (citing *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)). Additionally, in this Circuit, specific jurisdiction is a claim-specific inquiry and therefore "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth*, 472 F.3d at 274.

### A. The CFTC Fails to Sufficiently Allege That Jonathan Was Responsible for Any Conduct Expressly Aimed at the United States.

The CFTC's Complaint vaguely alleges that Defendants engaged in concerted (though unspecified) conduct aimed at targeting potential and current U.S. customers of the Cartu Platform. These allegations' unifying feature is that none of them clearly state what conduct "the Cartu Brothers," collectively or individually, engaged in to target U.S. customers to enter binary options contracts. Rather, the CFTC in nearly all its allegations is content lumping together "the Cartu

Brothers" or "Defendants," as if they uniformly conducted themselves as a single actor.  Such broad-brush allegations against three adult individuals (who even the CFTC acknowledges live in different countries) are as improper as they are inaccurate.

The CFTC alleges (and thus admits) that the Cartu Brothers were not the ones who were directly in control of the brokers who allegedly solicited and provided misleading information to U.S. customers.  Although the CFTC repeatedly attempts to tie the brothers, both collectively and individually, to this conduct, the CFTC concedes that

> [a]t least by May 2014, the Peretz Brothers were responsible for supervising the individual brokers who solicited customers to trade with BeeOptions and, thereafter, Glenridge and/or Rumelia.  At various times during the Relevant Period, Nati supervised the individual brokers responsible for soliciting prospective customers and obtaining an initial deposit and Leeav supervised the individual brokers responsible for soliciting customers to make additional deposits.

(Compl. ¶ 63.)   The CFTC alleges that unnamed "brokers," who are under the control and supervision of the Peretz Brothers, made misrepresentations to customers.  (*Id.* ¶ 72 ("[B]rokers promised returns 'between 60-85%….'"), *id.* ¶ 74 ("[B]rokers…would falsely represent that their interests were aligned with the interest of customers…."), *id.* ¶ 75 ("[I]ndividual brokers employees who solicited customers to trade binary options with the Cartu Brands and certain other employees used alias or stage names…and would misrepresent their location, educational background, and financial expertise."), *id.* ¶ 85 ("[B]rokers, as well as other employees and agents acting on behalf of the Cartu Brands…falsely represented to customers and prospective customers that their funds were held in regulated financial institutions.").)  The CFTC makes no allegation that the Cartu Brothers, collectively or individually, exercised any control over the Peretz Brothers or the individual brokers.  *See CFTC v. TFS-ICAP, LLC*, 415 F. Supp. 3d 371, 384-85 (S.D.N.Y. 2019) (finding the CFTC sufficiently pled a defendant's supervision and control resulted in

specific jurisdiction where the defendant "supervised the emerging markets brokers," received status reports from and was reported to by a New York manager, and "hired and managed U.S.-based brokers, including by controlling the bonus pool and exercising authority over hiring decisions). The allegations regarding the Cartu Brothers prior to May 2014—concerning a one-month time period—and the Peretz Brothers' supervision are vague, conclusory, and provide no clear indication of what they are alleged to have done.

The Cartu Brothers' alleged ownership and control of certain corporate entities described in the Complaint is not sufficient to confer jurisdiction. "Although a vicarious theory may be a basis for *liability* against [a defendant], it is not a basis for asserting jurisdiction over him." *Sefton v. Jew*, 201 F. Supp. 2d 730, 743 n.8 (W.D. Tex. 2001). Further, the CFTC's allegations of control-person liability do not circumvent its burden to sufficiently plead personal jurisdiction. "[P]ersonal jurisdiction involves due process considerations that may not be overridden by statutes or the common law." *Driving Force Techs., Inc. v. Panda Distrib., Inc.*, No. 4:10-cv-24, 2012 U.S. Dist. LEXIS 65696, at *12-14 (E.D. Tex. May 10, 2014) (collecting cases), *adopted by* 2012 U.S. Dist. LEXIS 99094 (E.D. Tex. July 17, 2012); *see City of Monroe Emps. Ret. Sys. V. Bridgestone Corp.*, 399 F.3d 651, 667-68 (6th Cir. 2005) (in a securities law case, refusing to "substitute our analysis of the securities laws' substantive bases for liability for the required, due-process based personal jurisdiction analysis"); *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) ("[L]iability is not to be conflated with amenability to suit in a particular forum. Personal jurisdiction has constitutional dimensions, and regardless of policy goals, Congress cannot override the due process clause, the source of protections for non-resident defendants."). The conclusory allegation that the Cartu Brothers owned and controlled the overseas corporate entities

8

tangentially involved in the sale of binary options is not enough, standing alone, to establish specific jurisdiction over any or all of the Cartu Brothers.

The CFTC's vague allegations of misrepresentations and deception by the Cartu Brothers, collectively and individually, are also insufficient to establish specific jurisdiction because they do not allege contact with or targeted towards the United States (*Id.* ¶¶ 71-74, 76-77); *see TFS-ICAP*, 415 F. Supp. 3d at 386 (noting "no personal jurisdiction where the complaint 'fails to allege any United States connection to the alleged communications" (quoting *Sullivan v. Bayclays PLC*, No. 13-cv-2811 (PKC), 2017 U.S. Dist. LEXIS 25756, at *147 (S.D.N.Y. Feb. 21, 2017))). Where the CFTC does attempt to tie alleged misrepresentations and deception by the Cartu Brothers to U.S. customers, it does so with conclusory and unsupported allegations. (*See id.* ¶¶ 71, 75-77, 85.) The CFTC does not provide any support for the vague allegation that "[a]t the direction of the Cartu Brothers and, later, the Peretz Brothers, the individual brokers [sic] employees used alias or stage names when interacting with customers and prospective customers, including those located in the U.S., and would misrepresent their location, educational background, and financial expertise." (*Id.* ¶ 75.) Nor does the CFTC provide support for its allegation that "Jonathan and the Peretz Brothers mandated that Cartu Brand brokers pitch bonuses to customers as being helpful." (*Id.* ¶ 76.)

In sum, the CFTC's allegations are either contradictory to the theory that the Cartu Brothers exercised control over the brokers who allegedly contacted U.S. customers or are vague and conclusory as to the alleged acts of the Cartu Brothers themselves. These allegations are insufficient to satisfy the CFTC's burden of establishing personal jurisdiction over Jonathan.

**B.  Jonathan's Alleged Operation of Platform Websites Do Not Support a Finding that This Court Has Personal Jurisdiction.**

Analyzing alleged U.S. contacts through the websites purportedly maintained by entities controlled by the Cartu Brothers, the CFTC fares no better.  The Complaint fails to describe the level of interactivity that the Cartu Brands' websites have with customers and fails to explain how these websites allegedly "targeted" U.S. customers.   This Court cannot exercise personal jurisdiction over Jonathan based on the existence and/or operation of these websites alone.

The Supreme Court has recognized that while the internet is a "unique and wholly new medium of worldwide human communication," *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 850 (1997), "the analysis applicable to a case involving jurisdiction based on the Internet…should not be different at its most basic level from any other personal jurisdiction case," *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 226 (5th Cir. 2012) (citation omitted). In cases concerning a defendant's internet presence, the Fifth Circuit analyzes a defendant's conduct using the spectrum approach developed in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).  *GreatFence.com, Inc. v. Bailey*, 726 F. App'x 260, 261 (5th Cir. 2018).  At one end of the spectrum, a "'passive website" which "merely allows the owner to post information on the internet, is at one end of the scale" and thus insufficient to establish personal jurisdiction.  *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (citing *Zippo*, 952 F. Supp. at 1124).  At the other end of the spectrum, "sites whose owners engage in repeated online contacts with the forum residents over the internet" can be sufficient to establish personal jurisdiction.  *Id.* (citing *Zippo*, 952 F. Supp. at 1124).  In between these two, the court "must examine the extent of the interactivity and nature of the forum contacts."  *Id.* (citing *Zippo*, 952 F. Supp. at 1124); *see Pervasive*, 688 F.3d at 226 ("Under *Zippo*, 'the exercise of jurisdiction is determined by the level

of interactivity and the commercial nature of the exchange of information that occurs on the Website.'" (quoting *Zippo*, 952 F. Supp. at 1124)).

*Waraich v. Nat'l Austl. Bank Ltd.*, No. H-18-4069, 2019 U.S. Dist. LEXIS 90458 (S.D. Tex. May 30, 2019), is instructive.   There, a plaintiff sued International Capital Markets Proprietary Limited ("International Capital"), a spot foreign-exchange market broker, alleging that it represented it was a "qualified forex dealer" under U.S. law without registering as such.  *Id.* at \*1.  International Capital is headquartered and has its principal place of business in Sydney, New South Wales, Australia.  *Id.* at \*12.  The plaintiff, who traded with International Capital, alleged that the court had personal jurisdiction because International Capital's "website allows United States residents to apply for, and open, trading accounts to trade on the foreign-exchange market." *Id.* at \*17

The court determined that it did not have personal jurisdiction over International Capital Markets, in part, because the plaintiff failed to "allege that International Capital has 'offices or sales agents' in the U.S. or solicits business through 'advertising targeted specifically to' the United States."  *Id.* at \*18 (quoting *Pervasive*, 688 F.3d at 228).  Further, despite allegedly transacting with a U.S. customer, the court explained that the mere allegation that International Capital has "'a commercial, interactive website which is accessible globally,'" without more, "forms no basis to suggest that International Capital Markets has 'purposefully avail[ed] itself of the privilege of conducting activities within the [U.S.], thus invoking the benefits and protections of its laws.'"  *Id.* at \*19 (alterations in original) (quoting *Pervasive*, 688 F.3d at 227-28).  Notably, the court explained that even though the plaintiff alleged that International Capital Markets "marketed and sold online-trading services to him, these allegations do not support an inference that International Capital…targeted United States Residents."  *Id.* at \*18-19.

11

Here, as in *Waraich*, the allegations in the Complaint fail to establish targeted conduct towards the U.S., and indeed fall well-short of that threshold.  The CFTC does not allege—nor can it—that any of the Cartu Brothers, or any of the entities they control, maintains an office or employs sales agents in the U.S., as the Complaint admits that such operations were only conducted overseas.  The CFTC alleges that the Cartu Brothers "marketed, offered, and sold options to retail customers, including Customers in the United States," (Compl. ¶ 53), but provides no explanation as to how their marketing and offering specifically targeted the U.S. rather than merely operating "a commercial, interactive website which is accessible globally," *Waraich*, 2019 U.S. Dist. LEXIS 90458, at *19 (quoting *Pervasive*, 688 F.3d at 227-28).  The Complaint essentially acknowledges that the Cartu Brothers' allegedly improper activity was *not* expressly focused on Americans, consistently employing the phrase "individuals in the United States *and elsewhere*."  (*See* Compl. ¶¶ 3, 6, 62, 64 (emphasis added)); (*see also id.* ¶ 53 (alleging the Cartu Brothers "sold binary options to retail customers, *including customers in the United States*.") (emphasis added).)  Even if the Cartu Brothers' marketing, offering, and selling reached an unidentified number of people in the U.S., that is insufficient without more to establish that the Cartu Brothers contacts were "deliberate and substantial that [they] should have reasonably anticipated being haled into court." *Id.* at *19 (quoting *Pervasive*, 688 F.3d at 228).  And as to the alleged manipulation of transactions on the "Spot Platform," (Compl. ¶¶ 78-79), the CFTC again fails to connect these allegations to the targeting of U.S. customers.  In short, the CFTC fails to allege any particularized and targeted conduct (much less misconduct) by the Cartu Brothers towards the United States whatsoever.

**C. The Exercise of Jurisdiction Over Jonathan Would Be Unreasonable.**

As discussed above, Jonathan does not have sufficient minimum contacts with the United States for this Court to exercise jurisdiction.  However, even if this Court determines that it has

personal jurisdiction over Jonathan, it must still determine whether the exercise of personal jurisdiction would comport with "traditional notions of fair play and substantial justice." *Bellaire Gen. Hosp*, 97 F.3d at 825.  In making this determination, the Court balances:

> (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum…in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolutions of controversies, and (5) the shared interests of the states in furthering fundamental social policies.

*Sangha*, 882 F.3d at 102 (citing *Burger King*, 471 U.S. at 477; *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987)).

These factors weigh heavily against exercising jurisdiction over Jonathan.  Jonathan, like his brothers, reside (and always has resided) outside of the U.S., (Compl. ¶¶ 16-18), and would incur unreasonable burdens to defend this case in the Western District of Texas, s*ee Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 222 (5th Cir. 2020) (noting that a defendant's burden of litigating in a forum is reduced where they have "travelled to [the forum] to conduct business"); *see also Johnston*, 523 F.3d at 615 ("Great care and reserve should be exercised when extending our notions of personal jurisdictions into an international field.") (quoting *Asahi*, 480 U.S. at 115). Further, none of the remaining factors support exercising jurisdiction over Jonathan.  This forum has no particular interest in this case as the CFTC has failed entirely to identify customers or transactions in this District, let alone the United States.  Additionally, there is nothing particular about this District that would make adjudicating this matter here more convenient or efficient. Because the balance of factors weighs heavily against this Court exercising personal jurisdiction over Jonathan, the Complaint should be dismissed.

## II. THE WESTERN DISTRICT OF TEXAS IS AN IMPROPER VENUE AS TO JONATHAN

Jonathan joins in and incorporates by reference the arguments for dismissal asserted by Joshua with respect to the CFTC's failure to adequately allege that Jonathan is a control person or that he should be held jointly and severally liable.  (*See* Joshua Mot. at § III.)

The CFTC is required to address venue as to each defendant and each claim individually. However, the CFTC shirks this obligation and instead simply invokes the venue provision of the CEA, 7 U.S.C. § 13a-1(e), without providing specific factual allegations as to Jonathan or the claims against him.  The CFTC does not allege that any act occurred in this District, nor does it allege that Jonathan has even the slightest connection with the District.  To the contrary, the CFTC alleges that Jonathan is a resident of Israel, (Compl. ¶ 17), that he purportedly owns and/or controls non-U.S. entities, and makes no attempt to allege that Jonathan has been present in the District at any point or that he even communicated with the only two defendants who are alleged to be located in the District, (*id.* ¶ 19, 22.)  There is not so much as an allegation that a single customer or transaction occurred in the District.  These allegations are wholly insufficient to satisfy the CFTC's burden to allege the propriety of venue as to each defendant.

## III. THE CFTC HAS FAILED TO STATE A CLAIM AGAINST JONATHAN.

A complaint that fails to provide "enough facts to state a claim that is plausible on its face" should be dismissed for failure to state a claim under Rule 12(b)(6).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The pleaded factual content [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  "[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

14

suffice.'" *LULAC v. Texas*, No. 5:15-CV-00219-RP, 2015 U.S. Dist. LEXIS 69514, at *4 (W.D. Tex. May 29, 2015) (second alteration in original) (Pitman, J.). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Martone v. Robb*, No. 1:14-CV-877 RP, 2017 U.S. Dist. LEXIS 122014, at *8 (W.D. Tex. Aug. 2, 2017) (Pitman, J.), *aff'd*, 902 F.3d 519 (5th Cir. 2018). The CFTC's complaint should be dismissed for failure to satisfy the requirements of Rules 8 and 9(b) and for failure to state a claim upon which relief can be sought under Rule 12(b)(6).

### A. The CFTC Has Failed to Satisfy the Requirements of Rules 8 and 9(b).

The Complaint's claims are not pled with sufficient detail to survive even ordinary pleading standards. Under Rule 8, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Del Castillo v. PMI Holdings North America Inc*, No. 4:14-CV-03435, 2016 U.S. Dist. LEXIS 91051, at *8 (S.D. Tex. July 13, 2016) (quoting *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully harmed-me accusation" and more than a "sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[L]umping together multiple defendants without identifying who is responsible for which acts does not satisfy the requirements of Rule 8(a)(2) and 12(b)(6)," let alone the particularity requirements of Rule 9(b). *Id.* at *50. As noted above, the CFTC's allegations lump all defendants together, generally ascribing the alleged conduct to all "Defendants" as well as unnamed brokers, affiliate marketers, employees, agents, representatives and even, on occasion, refers to the alleged actor as "they." (Compl. at ¶¶ 3, 52, 65, 74, 85.) Nor does the CFTC identify what specific acts Jonathan personally committed that violated U.S. law, or which transactions Jonathan supposedly engaged in that required U.S. registration and a designated U.S. options exchange. These

allegations are "devoid of 'further factual engagement.'"  *Del Castillo*, 2016 U.S. Dist. LEXIS

91051, at *13 (quoting *Iqbal*, 556 U.S. at 678).  For these reasons, all claims must be dismissed.

### B.  The CFTC Has Failed to Plead Fraud with Particularity as Required by Rule 9(b).

The CFTC's allegations likewise do not come close to satisfying the more stringent

particularity requirements of Rule 9(b).  Because all the CFTC's claims are predicated on the

underlying assertion that the defendants operated a "fraudulent" trading scheme, and because that

allegation is expressly incorporated into all counts of the Complaint, all of the CFTC's claims are

subject to Rule 9(b).[5]

To satisfy Rule 9(b), the CFTC must provide "specificity as to the statements (or

omissions) considered to be fraudulent, the speaker, when and why the statements were made, and

an explanation of why they were fraudulent."  *CFTC v. Growth Cap. Mgmt., LLC*, No. 3:10-CV-

1473-B, 2011 U.S. Dist. LEXIS 25424, at *8 (N.D. Tex. Mar. 11, 2011) (quoting *Plotkin v. IP

Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also CFTC v. M25 Invs. Inc.*, No. 3:09-CV-

1831-M, 2010 U.S. Dist. LEXIS 20557, at *5 (N.D. Tex. Mar. 6, 2010) ("The rule is interpreted

strictly as requiring plaintiffs to identify the alleged fraudulent statements and the speaker, state

the time and place of the statements, and explain how or why they were fraudulent.").  Similarly,

a fraudulent manipulation or fraud claim under the CEA will only survive if it sets forth "what

---

[5] (*See* Compl. ¶¶ 1, 8, 9, 112) (incorporating all allegations into failure-to-register claim), 119
(incorporating all allegations into off-exchange options claim).   The CFTC alleges that
"Defendants engaged in fraudulent activity at each stage of a typical binary option transaction."
(Compl. ¶ 52).  When a plaintiff incorporates allegations of fraud into claims that do not inherently
require allegations of fraudulent conduct, Rule 9(b) applies to those claims.  *See Brown v. Bilek*,
401 F. App'x 889, 893 (5th Cir. 2010) (applying Rule 9(b) to fiduciary duty claims  "predicated
on fraud"); *Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP*, No. 3:12-CV-4641-N,
2015 U.S. Dist. LEXIS 199175, at *6 (N.D. Tex. Feb. 4, 2015) (applying Rule 9(b) to unregistered
securities claims); *see also Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th
Cir. 2003); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the commodities at issue." *See CFTC v. Kraft Foods Grp., Inc.*, 153 F. Supp. 3d 996, 1012 (N.D. Ill. 2015).  Counts 1 and 2 also require scienter, which requires that the CFTC "set forth specific facts to support an inference of fraud." *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (quoting *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996)); *M25 Invs.*, 2010 U.S. Dist. LEXIS 20557, at *9 (finding that the CFTC "used improper group pleading that fail[ed] to adequately connect the who and the what" and emphasizing that plaintiffs may "not plead scienter against a general group").

This Court has rigorously applied Rule 9(b) in dismissing other fraud-based claims that were similarly lacking in detail.[6]  The Fifth Circuit "applies 'Rule 9(b) to fraud complaints with bite and without apology.'" *Liberty Bankers Life Ins. Co. v. Lenhard*, No. 3:16-CV-02417-N, 2018 U.S. Dist. LEXIS 144745, at *14 (N.D. Tex. Apr. 9, 2018), quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185-86 (5th Cir. 2009); *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) ("This Court interprets Rule 9(b) strictly") (quoting *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996)).

---

[6] *See, e.g.*, *Nicholas v. Ameris Bank*, No. 1:20-CV-1054-RP, 2021 U.S. Dist. LEXIS 133210, at *10-12 (W.D. Tex. June 8, 2021) (Pitman, J.) (dismissing fraud claims where complaint did "not identify a speaker, state where any fraudulent or misleading statements were made, or specifically describe how these statements were false"); *MWK Recruiting, Inc. Jowers v. Counsel Unlimited LLC*, No. 1:18-CV-444-RP, 2020 U.S. Dist. LEXIS 229755, at *20-21 (W.D. Tex. Dec. 8, 2020) (Pitman, J.) (dismissing claim under Rule 9(b) where complaint "offers only vague time frames" and did not specify where or when alleged misstatements occurred); *Bradford v. Nationwide Ins. Co. of Am.*, No. 1:17-CV-1067-RP, 2018 U.S. Dist. LEXIS 90599, at *7 (W.D. Tex. May 31, 2018) (dismissing fraud claim where complaint provided no "details about when and where such a statement was made").

The CFTC's allegations violate Rule 9(b) in virtually every respect.  The Complaint fails to provide the "who, what, when, where and how" with respect to alleged misstatements or improper acts by Jonathan.  The Complaint contains vague allegations that Jonathan "solicited," "mandated," and "approved," certain conduct and fails to provide any level of specificity or detail as to those allegations.  The CFTC fails to identify specific documents, communications or acts directed at U.S. persons, let alone, communications that contain specific false or misleading representations or acts by Jonathan.  Glaringly absent is where or when any such communications or acts occurred and what specific role Jonathan had with respect to each such communication or act.

Instead, the Complaint alleges in conclusory fashion that Jonathan, among multiple other named and unnamed individuals, owned and operated various entities, all of which were incorporated abroad, and that he played some unstated role in "soliciting and selling binary options."  There are no particularized allegations showing that Jonathan personally solicited or sold options to individuals in the United States.  Rather, the CFTC alleges in conclusory fashion that Jonathan solicited customers.  (Compl. ¶ 62.)  The CFTC resorts to vague claims that the defendants as a group "directed" or acted "in concert with" others in furtherance of the alleged fraud and attributes oblique misrepresentation, omissions and acts globally to all "Defendants" as well as unnamed brokers, affiliate marketers, employees, agents, representatives and even, on occasion, refers to the alleged speaker as "they."  (Compl. at ¶¶ 3, 52, 65, 74, 85).  But these allegations are patently insufficient to establish *any* element of a fraud-based claim.

Vague allegations of conduct occurring without as much as identifying a timeframe, (*id.* ¶ 71, 76; *see id.* ¶ 79 (alleging "Jonathan and/or the Peretz Brothers typically approved requests to alter trading outcomes" "[f]or at least part of the Relevant Period"),) are woefully insufficient

18

to satisfy the level of particularity required by Rule 9(b).  So too are the generalized allegations that "Defendants" as a group took any action, rather than providing specific and tailored allegations to each defendant.  *See MWK Recruiting*, 2020 U.S. Dist. LEXIS 229755, at *20 (Pitman, J.) (dismissing claim under Rule 9(b) where complaint "offers only vague time frames" and did not specify where or when alleged misstatements occurred); *CFTC v. Giddens*, No. 1:11-cv-2038-WSD, 2012 U.S. Dist. LEXIS 23728, at *15 (N.D. Ga. Feb. 24, 2012) (holding as "plainly insufficient under Rule 9(b)…general allegation that the scheme occurred between January and October 2010, [where] there [was] no indication of the time these statements occurred, where they occurred, in what manner the statements were transmitted, or to whom they were made."); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("[L]oose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do.")).

The CFTC also fails to allege particularized facts showing that Jonathan acted with scienter, which again may not be alleged on a group-pled basis.  *See M25 Invs.*, 2010 U.S. Dist. LEXIS 20557, at *15 ("To adequately plead scienter, the Commission must allege specific facts to support an inference of fraud"); *Herrmann Holdings*, 302 F.3d at 564-65; *Lovelace*, 78 F.3d at 1018.  The CFTC's broad allegation that Jonathan and others "made decisions regarding platform functionality" is insufficient to support an inference that Jonathan recklessly or intentionally utilized manipulative or deceptive devices. (Compl. ¶ 80.)  As is the CFTC's threadbare allegation that "the Cartu Brothers" "controlled" and "manipulated" transactions through Blue Moon, an entity purportedly under Jonathan's control.  (*Id*. ¶ 52.)

Allegations that an entity purportedly owned by Jonathan, Blue Moon, entered into unspecified agreements, opened unspecified accounts, and handled unspecified customer funds, is wholly insufficient to support an inference of fraud as to him.  Similarly, Jonathan's alleged partial

ownership of the payment processing service Greymountain, an entity incorporated in Ireland, is also insufficient to support an inference of fraud. The CFTC does not allege, beyond vague and conclusory assertions, that Jonathan, Blue Moon or Greymountain initiated or directed specific transactions and appears to allege that Jonathan should be liable because Greymountain performed payment processing services. But it is insufficient for the CFTC to simply allege Jonathan's such conduct, standing alone, to establish fraud. Entering agreements, opening accounts, handling funds, making decisions about the "functionality" of the "Cartu Platform," and backend transaction processing are not inherently unlawful activities. Without further allegations establishing that Jonathan's conduct in these regards were fraudulent, vague allegations regarding Jonathan's licit conduct is well short of the standards of Rule 9(b). The CFTC has failed to provide specific, particularized allegations of fraud.

Additionally, as previously discussed, Counts 3 and 4 are predicated on allegations of fraud and likewise are not pled with any particularity, let alone the level of particularity required to satisfy Rule 9(b). The CFTC's conclusory group-pled claims do not suffice under Rule 8 as well. *See Del Castillo*, 2016 U.S. Dist. LEXIS 91051, at *50. There is no well-pled allegation showing that Jonathan participated in any U.S. transactions that required registration or which was required to be conducted on a CFTC-approved U.S. exchange.

### C.  The CFTC Has Failed to State a Claim Upon Which Relief Can Be Granted.

#### 1.  The CEA Does Not Apply Extraterritorially.

Jonathan joins in and incorporates by reference the arguments for dismissal asserted by Joshua with respect to the CFTC's requests for restitution and disgorgement. (*See* Joshua Mot. at § II.B.1.).

The allegations against Jonathan include that he allegedly owned and controlled a company incorporated in the Seychelles, allegedly owned part of a company incorporated in Ireland, and allegedly solicited customers through BeeOptions, a website he is not alleged to have owned or controlled. (Compl. ¶¶ 24, 27, 62.) And further, the CFTC alleges that BeeOptions operated out of an Israeli-based gaming company's conference room. (*Id.* ¶ 62.) To the extent that the CFTC attempts to allege that Jonathan himself "solicited" individuals in the U.S., it does so in vague terms, with unspecified conduct reaching customers generally, and nothing to suggest that it concerned U.S.-focused activity. (*Id.*) The CFTC's allegations concerning the brokers' conduct and allegations suggesting Jonathan controlled them, (*id.* ¶¶ 71, 76, 85,) are belied by the CFTC's allegation that the Peretz Brothers controlled the brokers, (*id.* ¶ 63.) These allegations solely concern either conduct that allegedly occurred abroad and does not relate to U.S-focused activity or that is too vague to sufficiently plead U.S.-focused activity. Without more, the CFTC's claims concern extraterritorial conduct, and as the CEA does not apply extraterritorially, and thus has failed to state a claim against Jonathan.

### 2. The Complaint Does Not Adequately Plead the Elements of Counts 1, 2, and 4 Against Jonathan Cartu.

Jonathan joins in and incorporates by reference the arguments for dismissal asserted by Joshua with respect to the CFTC's requests for restitution and disgorgement. (*See* Joshua Mot. at § II.B.2.). The CFTC has failed to plead that the alleged binary options at issue here are instruments "commonly known to the trade" as an option, 7 U.S.C. § 1a(36), or that it constitutes a "swap," 7 U.S.C. § 1a(47)(A). Further, the CF"C has failed to allege with sufficient specificity that Jonathan engaged in any conduct that violates 7 U.S.C. § 6c(b) or 17 C.F.R. § 32.2. As a result, the CFTC has failed to sufficiently plead the elements of Counts 1, 2, and 4 as to Jonathan, and this Court should dismiss the Complaint as to him.

### 3. The Complaint Does Not Adequately Allege that Jonathan is a Control Person or that He Should Be Held Jointly and Severally Liable.

Jonathan joins in and incorporates by reference the arguments for dismissal asserted by Joshua with respect to the CFTC's failure to adequately allege that Jonathan is a control person or that he should be held jointly and severally liable.  (*See* Joshua Mot. at § II.B.3.)

The CFTC does not—and cannot—allege that Jonathan had control over any of the individuals or entities that allegedly operated "the Cartu Brands," nor does it allege that Blue Moon was part of "the Cartu Brands" or "the Cartu Platform."  (*See* Compl. ¶¶ 2, 5.)  The Complaint wholly lacks allegations about the existence or non-existence about supervision, control, or reasonable diligence, let alone any allegations specifically relating to Jonathan's involvement in the supposed business aside from vague allegations that Jonathan did not act in good faith.  Rather than satisfy its burden by alleging the ways in which Jonathan did not act in good faith, the CFTC simply states that it is so.  (*Id*. ¶¶ 99, 109, 126.)  And to the extent that the CFTC does attempt to plead control in some sense, the CFTC specifically alleges that the Peretz Brothers controlled the brokers who were allegedly responsible for soliciting potential and current customers.  (*Id*. ¶ 63.)  The period prior to the Peretz Brothers' control, the CFTC vaguely alleges that "Jonathan, and others acting on behalf and under the direction of the Cartu Brothers, began soliciting individuals in the U.S. and elsewhere" without any further supporting allegations.  (*Id.* ¶ 62.)  These allegations are insufficient to establish that Jonathan is a control person and subject to control person liability.

### IV. THE PRAYER OF RELIEF IN THE FORMS OF DISGORGEMENT AND RESTITUTION SHOULD BE DISMISSED.

Jonathan joins in and incorporates by reference the arguments for dismissal asserted by Joshua with respect to the CFTC's requests for restitution and disgorgement.  (*See* Joshua Mot. at § V.)

The Relevant Period as alleged and defined by the CFTC reaches far beyond the five-year statute of limitations for both disgorgement and restitution under the federal catch-all statute, 28 U.S.C. § 2462. *See Kokesh v. SEC*, 137 S. Ct. 1653, 1639 (2017); *CFTC v. Gramalegui*, No. 15-cv-02313-REB-GPG, 2018 U.S. Dist. LEXIS 165315, at *76-77 (D. Colo. Sept. 26, 2018) (applying *Kokesh* and limiting the CFTC's request for restitution to amounts dating back five years pursuant to the catch-all statute); *see also Liu v. SEC*, 140 S. Ct. 1936, 1940-41 (2020) (limiting disgorgement in SEC enforcement proceedings to net profits). And further, the CFTC seeks disgorgement and restitution beyond what is it statutorily authorized to seek. *See* 7 U.S.C. § 13a-1(d)(3)(A)-(B) (permitting the CFTC to seek "restitution to persons who have sustained losses proximately caused by such violations (in the amount of such losses)" and "disgorgement of gains received in connection with such violations"). This Court should dismiss the Complaint to the extent that it seeks remedies beyond what is permitted by 28 U.S.C. § 2462 and the CEA.

## <u>CONCLUSION</u>

For the foregoing reasons, Jonathan respectfully requests that this Court enter an order dismissing the CFTC's Complaint.

Dated: February 7, 2022                                 Respectfully submitted,

                                                        /s/ Joe Kendall
                                                        Joe Kendall

                                                        Kendall Law Group, PLLC
                                                        3811 Turtle Creek Blvd. Suite 1450
                                                        Dallas, TX 75219
                                                        Tel. 214-744-3000
                                                        Fac. 214-744-3015
                                                        jkendall@kendalllawgroup.com
                                                        *Attorney for Defendant Jonathan Cartu*

/s/ David B. Harrison
David B. Harrison (Admitted *Pro Hac Vice*)
Eric H. Jaso (Admitted *Pro Hac Vice*)

Spiro Harrison
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
Tel. 973-232-0881
dharrison@spiroharrison.com
*Attorneys for Defendant Jonathan Cartu*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on February 7, 2022, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

/s/ David B. Harrison