# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **COMMODITY FUTURES** | § | |
| **TRADING COMMISSION,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **No.  A-20-CV-00908-RP** |
| **DAVID CARTU, JONATHAN** | § | |
| **CARTU, JOSHUA CARTU, RYAN** | § | |
| **MASTEN, LEEAV PERETZ, NATI** | § | |
| **PERETZ,  BAREIT MEDIA LLC,** | § | |
| **BLUE MOON INVESTMENTS** | § | |
| **LTD.,  ORLANDO UNION INC.,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Joshua Cartu's motion to dismiss, Dkt. 58; Defendant David Cartu's motion to dismiss, Dkt. 59; Defendant Jonathan Cartu's motion to dismiss, Dkt. 60; and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

## I.       BACKGROUND

Plaintiff Commodity Futures Trading Commission ("CFTC") brings this lawsuit against Defendants David Cartu, Jonathan Cartu, Joshua Cartu, Leeav Peretz, Nati Peretz, Ryan Masten, All Out Marketing Limited, BareIt Media LLC, d/b/a SignalPush, Blue Moon Investments Ltd., and Orlando Union Inc. (collectively,

"Defendants") based on an allegedly "massive fraudulent 'binary options' trading scheme" operated by Defendants. Dkt. 1, at 1.

A binary option is an options contract where payment is dependent on the outcome of a discrete event—usually the price of an underlying asset, referred to as the "strike price," by a pre-determined date and time. *Id.* at 13-14. At the pre-determined date and time, the "expiration" or "expiry," the binary option automatically expires. *Id.* at 14.  If the customer correctly predicted the strike price, she is entitled to payment of a pre-determined amount of money; whereas if the customer's prediction is incorrect, she loses the amount she paid for the trade, and receives no further payment. *Id.* at 14-15. Binary options "brands" sell and market binary options, which are typically purchased through trading platforms accessed through a brand's website, or through an "affiliate marketer" that solicits prospective customers on behalf of brands. *Id.* at 14.

In the United States, there are only three "designated contract markets" authorized to sell binary options that are commodity options transactions to retail customers: Cantor Exchange LP, Chicago Mercantile Exchange, Inc., and the North American Derivatives Exchange, Inc. *Id.* at 15. Typically, a designated contract market earns a commission on trades, but has no interest in its outcome because customers on opposite sides of each binary option transaction are typically matched so that for each customer who correctly predicts the strike price, there is a customer who made an incorrect prediction. *Id.* at 17. The CFTC alleges that Defendants engaged in fraudulent activity at each stage of a typical binary option transaction by

misrepresenting the nature of the binary options transaction they offered, taking the opposite position on trades with customers, and manipulating the outcome of those trades to force customer losses. *Id.* at 15-17, 20-23.

As relevant to the pending motions to dismiss filed by Joshua Cartu, David Cartu, and Jonathan Cartu (together, the "Cartu Brothers"), the CFTC alleges that the Cartu Brothers began their binary options scheme around 2013 through the website "BeeOptions," which operated out of a conference room in the offices of an Israeli-based gaming company owed by Joshua Cartu and David Cartu. *Id.* at 18. Beginning around 2014, the Cartu Brothers, in concert with Leeav Peretz and Nati Peretz (the "Peretz Brothers") began soliciting customers in the United States through multiple websites—and ultimately through the "Cartu Platform" starting in 2015. *Id.* at 18, 23-24. The Cartu Brothers also developed their own payment service processor for credit card transactions, Greymountain, specifically to "facilitate the transfer of funds from customers in the U.S." because banks and credit card companies in the United States might have "refused to transfer customer funds to the Cartu Brands due to suspected fraud." *Id.* at 3, 25.

The Cartu Brothers, all foreign nationals, reside outside the United States, though they are alleged to have "made material misrepresentations and omissions to individuals located in the United States and elsewhere in order to entice them to deposit funds to trade binary options." *Id.* at 2, 6. The CFTC alleges that the Cartu Brothers marketed, offered, and sold binary options to retail customers, including customers in the United States, through many internet trading websites, including

www.beeoptions.com and www.beeoptions.us (collectively, the "BeeOptions website");
www.glenridgecapital.com (the "Glenridge website"); www.rumeliacapital.com (the
"Rumelia website"); www.greymountainmanagement.com (the "Greymoutain
website"); www.megacharge.com, www.megacharge.net and megaoptimization.com;
and www.tracypai.com (collectively, the "Cartu Brand Websites"). *Id.* at 16. Some of
these websites also handled payment processing services for the Cartu Brands. *Id.* at
17.

Over time, the Cartu Brothers used these websites to solicit customers in the
United States and elsewhere. *Id.* at 18. For example, starting on or before April 2013,
Jonathan Cartu and his brother directed those under their leadership to solicit
individuals in the United States and elsewhere to trade illegal, off-exchange binary
options through the BeeOptions website. *Id.* Also in 2013, the Cartu Brothers entered
a partnership with Defendants BareIt Media d/b/a SignalPush and Ryan Masten,
both based in Texas, to solicit customers in the United States. *Id.* at 19. In or around
December 2014, the Cartu Brothers and Peretz Brothers began using the Glenridge
website to solicit individuals in the United States and elsewhere to trade illegal, off-
exchange binary options; and beginning in or around January 2015, the Cartu
Brothers and Peretz Brothers began using the Rumelia website to solicit individuals
in the United States and elsewhere to trade illegal, off-exchange binary options
through the Rumelia website. *Id.*

Defendants' profits from the binary options scheme were massive. *Id.* at 26.
Greymountain received and processed over $165 million in connection with illegal off-

exchange binary options transactions, and 60 percent of those transactions were for individuals located in the United States or Canada. *Id.* Visa and Mastercard each processed tens of millions of dollars in transactions for the Cartu Brothers on behalf of customers based in the United States. *Id.*

The CFTC brought four causes of actions against Defendants for violations of the Commodity Exchange Act ("CEA"), seeking permanent injunctions against Defendants preventing them from continuing to violate the CEA, disgorgement of profits, and restitution to all those defrauded by the binary options scheme. *Id.* at 26-36. Each of the Cartu Brothers filed a motion to dismiss the claims against them, arguing that this Court lacks personal jurisdiction over them, venue is improper in this district, and that the CFTC has failed to state a claim against any of them. Dkts. 58; 59; 60. The CFTC filed a consolidated response addressing the arguments raised in the Cartu Brothers' motions to dismiss. Dkt. 67. The undersigned will address each of the arguments for dismissal below.

## II.    LEGAL STANDARDS

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(2). On such a motion, "the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The court may determine the jurisdictional issue "by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* But when, as here, the Court rules on the motion without an

evidentiary hearing, the plaintiff need only present a *prima facie* case that personal jurisdiction is proper; proof by a preponderance of the evidence is not required. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Id*. Nevertheless, a court need not credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

## III.    DISCUSSION

Each of the Cartu Brothers moves to dismiss the claims against them for lack of personal jurisdiction. *See* Dkts. 58; 59; 60. The Cartu Brothers are all Canadian citizens, and David Cartu continues to reside there. Dkt. 1, at 6. David Cartu and Jonathan Cartu lived in Israel during the relevant time frame; and Jonathan Cartu continues to reside there, while Joshua Cartu currently resides in Hungary. *Id*. The Cartu brothers argue that the CFTC failed to allege sufficient facts to show that any of the Cartu Brothers "expressly aimed" their conduct to the United States. Dkts. 58, at 9-10; 59, at 15-21; 60, at 12-19. The CFTC responds that it has sufficiently pleaded that the Cartu Brothers directed their activities towards the United States in order to solicit customers to "purportedly trade binary options," and contracted with entities and individuals based in the United States to "effectuate [a] fraudulent scheme." Dkt. 67, at 14.

Because the Cartu Brothers are not residents of the United States, Dkt. 1, at 6, the CFTC has the burden to establish a *prima facie* case for this Court's personal jurisdiction over them. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Exercising personal jurisdiction over a nonresident defendant is compatible with due process when "(1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Walk Haydel*, 517 F.3d at 243 (cleaned up). There are two types of minimum contacts: those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction. *Lewis*, 252 F.3d at 358. The CFTC only argues that the Cartu Brothers subject to this Court's specific jurisdiction. Dkt. 67, at 13-16.

Specific jurisdiction applies when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel*, 517 F.3d at 243. The touchstone of specific-jurisdiction analysis is "whether the defendant's conduct shows that it reasonably anticipates being haled into court." *McFadin*, 587 F.3d at 759 (cleaned up). Even a single contact can support specific jurisdiction if it creates a "substantial connection" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985). Where, as here, the federal statute under which the CTFC sues the Cartu Brothers provides for nationwide service of process, the relevant contacts for determining personal jurisdiction are contacts with the United States as a whole.

7 U.S.C. § 25(c) (CEA)); *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994).[1]

## A.   David Cartu

David Cartu argues that the claims against him should be dismissed, among other reasons, because this Court lacks personal jurisdiction over him. Dkt. 59, at 16. He offers several bases for his argument that the CFTC failed to allege sufficient minimum contacts with the United States. *Id.* at 16-21. First, David Cartu argues that the CFTC has failed to meet its burden of demonstrating personal jurisdiction over him because the complaint "simply lumps the defendants together with no well-pled facts regarding David's specific, purported U.S. contacts." *Id.* at 17 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("[P]laintiffs [must] submit evidence supporting personal jurisdiction over each defendant without grouping them together.").

The complaint includes the following allegations specific to David Cartu: (1) he owned and controlled All Out Marketing ("All Out"), an entity used to manipulate the results of binary options trades, and to transfer and conceal revenue generated

---

[1] The undersigned declines Jonathan Cartu's invitation to disregard Fifth Circuit precedent, and require the CFTC to show minimum contacts with the State of Texas instead of the United States based on the Fifth Circuit's expression of its "grave misgivings" with *Busch* in the *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan* panel decision "to the extent [*Busch*] concludes that the proper personal jurisdiction test in a national service of process case is whether minimum contacts exist between the individual and the national sovereign." Dkt. 60, at 11; 97 F.3d 822, 826 (5th Cir. 1996). Yet in *Bellaire* the Fifth Circuit nonetheless "dutifully appl[ied]" the rule set forth in *Busch*, and has continued to "dutifully apply *Busch*" in subsequent panel decisions. *Bellaire*, 97 F.3d at 826; *Luallen v. Higgs*, 277 F. App'x 402, 405 (5th Cir. 2008). This Court is bound to do the same. *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n.8 (5th Cir. 1992) (superseded by statute on other grounds) ("It has been long established that a legally indistinguishable decision of this court must be followed by other panels of this court and district courts unless overruled en banc or by the United States Supreme Court.").

through the Cartu Platform, Dkt. 1, at 7, 15, 24; (2) he owned and operated Greymountain and UKTVM Limited, entities that provided payment processing services for all of the brands that utilized the Cartu Platform, *id.* at 8, 24; (3) he owned, operated, and controlled Tracy P.A.I. Ltd. a/k/a Tracy PAI Management Ltd. ("Tracy PAI"), an entity that employed the individual brokers who solicited and sold binary options on behalf of the Cartu brands, *id.* at 9; (4) he operated the Beeoptions website with his brother Joshua Cartu, which in 2013 was used to solicit "individuals in the United States and elsewhere to trade illegal, off-exchange binary options," *id.* at 18; and (5) he received over eight million dollars in profits from the binary options scheme, at least half of which came from transfers from Greymountain, *id.* at 3.

Notably absent from these allegations are facts pointing to specific actions David Cartu himself took to solicit customers or misrepresent the nature of the trades to those in the United States. *Head v. Las Vegas Sands, Ltd. Liab. Corp.*, 760 F. App'x 281, 284 (5th Cir. 2019) ("applicable case law … requires plaintiffs to submit evidence supporting personal jurisdiction over each defendant without grouping them together."). Indeed, the CTFC's allegations that pertain to specific actions directed at the United States improperly group David Cartu together with his brothers, among others. *See, e.g.,* Dkt. 1, at 2 ("The Cartu Brothers and Peretz Brothers, along with their agents, employees, and representatives who solicited and sold binary options on behalf of the Cartu Brands (the 'brokers'), made material misrepresentations and omissions to individuals located in the United States and elsewhere."); *id.* at 16 ("The Cartu Brothers and Peretz Brothers marketed, offered, and sold binary options to

retail customers, including customers in the United States, through one or more internet trading websites."); *id.* at 18 ("Jonathan, and others acting on behalf and under the direction of the Cartu Brothers, began soliciting individuals in the United States and elsewhere to trade illegal, off-exchange binary options through the BeeOptions website."); *id.* ("the Cartu Brothers and Peretz Brothers began soliciting individuals in the United States and elsewhere to trade illegal, off-exchange binary options through the Glenridge website… [and] began soliciting individuals in the United States and elsewhere to trade illegal, off-exchange binary options through the Rumelia website").

Plaintiffs fail to address the lack of specific allegations showing David Cartu's individual actions directed at the United States, and in fact fail to individually address his contacts to this forum in their response—instead grouping him together with his brothers, among others. *See* Dkt. 67, at 14-16. Plaintiffs cite *FTC v. Educare Centre Servs., Inc.*, 414 F. Supp. 3d 960, 970, 976 (W.D. Tex. 2019), for the proposition that they have "adequately allege[d] that the Cartus controlled the web of companies they used to effectuate their scheme, and the Complaint alleges that the Cartus directed agents and representatives to engage in activity targeting the United States." Dkt. 67, at 15. Yet as David Cartu points out, there the court found that a foreign defendant purposefully availed himself of the forum by "making or directing deceptive phone calls to U.S. consumers, designing and implementing an unlawful telemarketing scheme that targeted the United States, and communicating extensively with a U.S.-based business to facilitate unlawful RCPO processing."

10

*Educare*, 414 F. Supp. 3d at 972. While David Cartu, according to the complaint, was certainly involved in designing and implementing the fraudulent binary options scheme, the complaint is devoid of allegations showing that he individually contacted with customers or co-conspirators in the United States, or that the binary options scheme was in any way specifically targeted at the United States. *See* Dkt. 1.

Moreover, while the CFTC alleges that the Cartu Brothers coordinated with a Texas-based individual and entity to perpetrate their binary options scheme here in the United States, *id.* at 3, 7, personal jurisdiction over David Cartu cannot be established based solely on the actions of his alleged co-conspirators. *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004) ("To establish its prima facie case of specific personal jurisdiction, [plaintiff] was required to demonstrate that [defendant] individually, and not as part of the conspiracy, had minimum contacts with Texas." (citing *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625 (5th Cir.1999))). The CFTC argues that the Cartu Brothers' contacts with "a U.S. resident and U.S. company to effectuate its fraudulent scheme" is "sufficient, particularly for intentional conduct," yet there are no individualized allegations in the complaint regarding David Cartu's contacts with Masten or BareIt[2] to support minimum contacts with the United States—even if the conspiracy ultimately injured residents

---

[2] While "an agent's contacts can be imputed to its principal for purposes of examining personal jurisdiction," here the CFTC failed to include any  allegation in its complaint or response brief regarding the existence of an agency relationship. *See* Dkts. 1; 67; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 n.22 (1985) (noting that "when commercial activities are 'carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party, at least where he is a 'primary participant' in the enterprise and has acted purposefully in directing those activities"); *Tradequip Servs. & Marine, Inc. v. Mazzone*, No. 4:17-CV-02446, 2017 WL 6025545, at *2 (S.D. Tex. Dec. 4, 2017).

here. *See* Dkt. 1; Dkt. 67, at 14; *Hawkins v. Upjohn Co.*, 890 F. Supp. 601, 608 (E.D. Tex. 1994) ("the effects of an alleged conspiracy in the forum state are insufficient to grant the court personal jurisdiction over the non-resident co-conspirators").

Because the CFTC has failed to plead any allegations addressing David Cartu's individual actions directed at the United States, it has failed to demonstrate that minimum contacts between David Cartu and the United States warrant the exercise of personal jurisdiction over him in this forum. Moreover, in its request for jurisdictional discovery, the CFTC did not elucidate the type of discovery it seeks, or how such discovery would "change the jurisdictional determination." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014); *see also Next Techs., Inc. v. ThermoGenisis, LLC*, 121 F. Supp. 3d 671, 676 (W.D. Tex. 2015) ("Plaintiff must state what facts discovery is expected to uncover and how those facts would support personal jurisdiction."). The undersigned will recommend that the District Court grant David Cartu's motion to dismiss for lack of personal jurisdiction and dismiss all claims against him without prejudice.

### B.     Jonathan Cartu

Jonathan Cartu similarly moves to dismiss the claims against him for lack of personal jurisdiction, arguing the CFTC failed to include any allegations demonstrating that he was responsible for any conduct specifically aimed at the United States, and that his operation of certain platform websites[3] is insufficient to

---

[3] In its response, the CFTC stated that it "does not rely on the website to demonstrate U.S.-directed activity." Dkt. 67, at 14. As such, the undersigned will not address whether Jonathan Cartu's operation of platform websites used to target customers based in the United States is sufficient to establish specific jurisdiction over him.

confer personal jurisdiction over him. Dkt. 60, at 12-19. In its consolidated response, the CFTC makes no attempt to segregate the activities of the Cartu Brothers, instead arguing that the "the Cartus directed agents and representatives to engage in activity targeting the United States," and as such, there are minimum contacts linking these defendants to this forum. Dkt. 67, at 15. As noted above, the CFTC may not rely on allegations that group together the Cartu Brothers for the purpose of showing minimum contacts between each defendant and the United States. *Head*, 760 F. App'x at 284.

In their complaint, the CFTC specifically alleged that in 2013 "Jonathan, and others acting on behalf and under the direction of the Cartu Brothers, began soliciting individuals in the United States and elsewhere to trade illegal, off-exchange binary options through the BeeOptions website." Dkt. 1, at 18. However, such a generalized allegation does not satisfy the requirements set forth by the Fifth Circuit to establish personal jurisdiction over Jonathan Cartu. While the CFTC is correct that the Fifth Circuit has countenanced the exercise of personal jurisdiction over non-resident defendants for intentional-tort claims based on just one phone call to the forum state that contained false statements, here the general allegation that Jonathan Cartu solicited customers in "the United States and elsewhere" is insufficient to demonstrate that the claims against him "'arises out of' or [are] related to the [his] contacts with the [United States]," rather than his efforts to operate a fraudulent binary options scheme on a global level. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332-34

(5th Cir. 1982) (holding one defamatory phone call initiated by defendant sufficient to establish personal jurisdiction).

The other cases cited by the CFTC in their response similarly dealt with more specific allegations of intentional conduct targeting the forum state. For example, in contrast to *Lewis*, which the CFTC cites in its response, where the Fifth Circuit found that "actual content" of defendants' communications to plaintiff demonstrated "purposeful availment of the benefits and protections of Texas law," here we have no indication of the "content" of Jonathan Cartu's solicitations of individuals in the United States so as to establish that purposeful misconduct supports the exercise of personal jurisdiction over him. 252 F.3d at 359; *see also Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."). Moreover, as noted above, the CFTC may not rely on the actions of resident co-conspirators, such as Masten of BareIt, to establish personal jurisdiction over Jonathan Cartu—and indeed, the CFTC does not even mention Masten or BareIt by name in its argument on this point, and puts forth no argument regarding an agency relationship that might support personal jurisdiction here. Dkt. 67, at 14-15; *Delta*, 99 F. App'x at 6.

Given the complex and widespread nature of the alleged fraudulent binary options scheme at issue here, the undersigned agrees with the CFTC that jurisdictional discovery may be useful in determining whether this Court may exercise jurisdiction over Jonathan Cartu. *See* Dkt. 67, at 16. However, "[a] plaintiff

seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction," and here the CFTC has wholly abdicated its duty to provide the Court with such information in support of its request for jurisdiction discovery. *See* Dkt. 67, at 16 (stating, without more, that "if the Court believes more evidence is necessary to establish personal jurisdiction, the CFTC respectfully requests that the Court order limited jurisdictional discovery"); *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 672 (S.D. Tex. 2014).

The undersigned will recommend that the District Court grant Jonathan Cartu's motion to dismiss for lack of personal jurisdiction and dismiss the claims against him without prejudice.

### C.    Joshua Cartu

Joshua Cartu also moves to dismiss the claims against him for lack of personal jurisdiction, incorporating "by reference the legal arguments and pleading failures regarding personal jurisdiction set forth in the motions to dismiss filed by David and Jonathan Cartu." Dkt. 58, at 10. Joshua Cartu requests that the Court dismiss the complaint as to him because it "fails to allege that he had any contact—let alone sufficient minimum contacts—with this forum, or that he purposefully availed himself of this forum." *Id.* The undersigned agrees and will recommend that the District Court grant Joshua Cartu's motion to dismiss for lack of personal jurisdiction and dismiss the claims against him without prejudice.

The complaint contains no specific allegations regarding Joshua Cartu's contacts with the United States, instead relying on allegations that he owned certain entities or office spaces used to perpetrate the fraudulent binary options scheme, "misrepresented the fundamental nature of the binary option transactions offered to customers on the Cartu Brands' websites and in emails, telephone calls, and other communications with customers and prospective customers," and shared in revenues generated by the Cartu Platform. Dkt. 1, at 8, 18, 20, 24. While "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted," here none of the allegations against Joshua Cartu entail any purported connection to the United States, apart from the fact that residents here were ultimately injured by the fraudulent scheme. *See id.*; *Lewis*, 252 F.3d at 358-59.

Such general allegations regarding Joshua Cartu's role in a global fraudulent trading scheme are insufficient to establish jurisdiction over him, and the CFTC may not rely on its allegations specific to the United States that do not individually connect Joshua Cartu to this forum. *Calder*, 465 U.S. at 790. Once again, while jurisdictional discovery may elucidate Joshua Cartu's role in "soliciting individuals in the United States" or marketing, offering, and selling binary options to retail customers in the United States, which the CFTC alleges the Cartu Brothers as a group did, the CFTC has not met its burden of showing what discovery it seeks, and how that discovery might serve to change the jurisdictional analysis in this case. Dkt. 1, at 16-18; Dkt. 67, at 16. In the absence of a proper request for jurisdictional

discovery, the undersigned will recommend that the District Court grant Joshua Cartu's motion to dismiss for lack of personal jurisdiction.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** the motions to dismiss filed by David Cartu, Jonathan Cartu, and Joshua Cartu, Dkts. 58; 59; 60, under Rule 12(b)(2), and **DISMISS** the claims against them **WITHOUT PREJUDICE**.

The referral of this case to the Magistrate Court should now be canceled.

## V.    WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED May 23, 2022.


DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE