**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** | |
| **Plaintiff,** | **Case No: 20-CV-908-RP** |
| **v.** | |
| **JONATHAN CARTU, LEEAV PERETZ, NATI PERETZ, AND BLUE MOON INVESTMENTS LTD.,** | |
| **Defendants.** | |

**ORDER FOR FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION,
CIVIL MONETARY PENALTIES,
AND OTHER STATUTORY AND EQUITABLE RELIEF**

On September 2, 2020, the Commodity Futures Trading Commission ("Commission" or

"Plaintiff") filed a complaint in this matter charging Defendants Jonathan Cartu, Leeav Peretz,

Nati Peretz, and Blue Moon Investments, Ltd., and others with violating Sections 4c(b) and

6(c)(1) of the Commodity Exchange Act ("CEA" or "Act"), 7 U.S.C. §§ 6c(b), 9(1), and

Commission Regulations ("Regulations") 32.3, 32.4, and 180.1(a)(1)–(3), 17 C.F.R. §§ 32.2,

32.4, 180.1(a)(1)–(3) (2023).

Defendants reside outside the United States.  After Plaintiff unsuccessfully attempted to

serve them via the Hague Convention on the Service Abroad of Judicial and Extrajudicial

Documents in Civil or Commercial Matters, Plaintiff sought and received authority from the

Court to serve the Defendants via regular mail, publication, and email.  *CFTC v. Cartu*, No. 20-

CV-908, 2021 WL 8441210, at *2 (W.D. Tex. July 28, 2021).  Only Cartu filed an appearance and participated in the litigation.

Plaintiff filed a First Amended Complaint on March 3, 2023, and on June 1, 2023, Leeav Peretz, Nati Peretz (together with Leeav Peretz, the "Peretz Brothers"), and Blue Moon Investments Ltd. ("Blue Moon") were properly served via mail, publication, and email.  The Peretz Brothers and Blue Moon failed to appear or answer the First Amended Complaint within the time permitted by Rule 12(a)(1).  Accordingly, the Commission filed motions for entry of a clerk's default against them, and on August 21, 2023, the Clerk entered default against them on August 29, 2023.

Cartu moved to dismiss the First Amended Complaint on May 19, 2023.  The Court denied his motion on August 15, 2023.  *CFTC v. Cartu*, No. 20-CV-908, 2023 WL 5246360 (W.D. Tex. Aug. 15, 2023).  On December 8, 2023, counsel for Cartu filed a motion to withdraw as counsel.  At a hearing on the motion held on December 20, 2023, Cartu informed the Court that he no longer intended to defend this action.  Accordingly, on December 20, 2023, the Court granted the motion to withdraw and issued an order giving Cartu an additional 30 days, or until January 19, 2024, to show cause in writing why a default should not be entered against him.  Cartu did not respond to the order to show cause.  On January 22, 2023, the Commission moved for entry of default against Cartu.  The clerk entered a default against Cartu on February 26, 2024.

The Commission has moved this Court to grant final judgment by default against Cartu, Leeav Peretz, Nati Peretz, and Blue Moon, order permanent injunctive relief, and impose a restitution obligation and civil monetary penalty.

The Court has carefully considered the First Amended Complaint, the allegations of which are well-pleaded and hereby taken as true, the Commission's memorandum in support of its motion, the record in this case, and the Court being otherwise advised in the premises, it is hereby:

**ORDERED** that the Plaintiff's Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief against Defendants Cartu, Leeav Peretz, Nati Peretz, and Blue Moon is **GRANTED**. Accordingly, the Court enters findings of fact, conclusions of law, and an Order of Final Judgment by Default for Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief pursuant to Sections 6c and 6d of the Act, 7 U.S.C. § 13a-1, as set forth herein.

## I.      FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.      Findings of Fact

**The Parties**

1.      Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1–26, and the Regulations promulgated thereunder, 17 C.F.R. pts. 1–190 (2023).

2.      Defendant Jonathan Cartu is a Canadian citizen. Cartu has never been registered with the Commission in any capacity.

3.      Defendant Leeav Peretz is from Windsor, Ontario, Canada. Leeav has never been registered with the Commission in any capacity.

4.      Defendant Nati Peretz is from Windsor, Ontario, Canada. Nati has never been resisted with the Commission in any capacity.

5.      Defendant Blue Moon Investments Ltd. was incorporated in the Seychelles on December 6, 2012.  Throughout the Relevant Period, Cartu owned and controlled Blue Moon. Blue Moon has never been registered with the Commission in any capacity.

**Defendants' Fraudulent Binary Options Scheme**

6.      Beginning in or before May 1, 2013 and continuing to at least April 29, 2018, Cartu, acting individually and through dozens of off-shore entities he and others working in coordination with him ultimately owned and controlled, operated a massive fraudulent binary options trading scheme.  One of these companies was Blue Moon, which Cartu used to open accounts, enter into contracts, and transfer, hold, and conceal funds to perpetuate the fraudulent scheme.  Leeav Peretz and Nati Peretz held management positions with the companies used to operate the scheme, and had authority over employees who solicited customers.

7.      Cartu, acting in concert with the Peretz Brothers, offered illegal, off-exchange binary options trading on currency pairs, oil, and other commodities on internet websites through customer-facing brands they owned and operated (collectively, the "Cartu Brands").

8.      Cartu and the Peretz Brothers, along with their agents, employees, and representatives who solicited and sold binary options on behalf of the Cartu Brands made material misrepresentations and omissions to individuals located in the United States and elsewhere to entice them to deposit funds to trade illegal, off-exchange binary options.  On the Cartu Brands' websites and in emails, telephone calls, and other communications with customers and prospective customers, Cartu, the Peretz Brothers, and the individual brokers promised "quick returns of 60-85%," although nearly all customers lost money.  They also falsely stated that the interests of the Cartu Brands were aligned with the interests of customers and failed to disclose that the Cartu Brands (and Cartu and the Peretz Brothers themselves) profited from

customer losses.  Further, at the direction of Cartu and the Peretz Brothers, the brokers misrepresented their financial expertise, compensation structure, physical location, and identities.

9.      Cartu and the Peretz Brothers also used various manipulative or deceptive devices, including so-called "bonuses" and "risk-free" trades to entice customers to deposit even more funds and then prevented customers from withdrawing funds.  Cartu and the Peretz Brothers mandated that Cartu Brands' brokers pitched bonuses to customers as being helpful, and informed the brokers that bonuses were actually a tool to keep money in the system by preventing withdrawals and therefore increasing the brand's profits.  As used by Cartu and the Peretz Brothers, the term "bonus" was misleading as it suggested that it provided a benefit to customers, when in fact the bonus was designed to limit customers' ability to withdraw funds. And the bonuses and risk-free trades offered by the Cartu Brands did not involve the transfer of actual funds to a customer or customer's account.

10.      At the beginning of the Relevant Period, Cartu and the Peretz Brothers used a trading platform and related software operated by third-parties to perpetuate the fraudulent binary options scheme.  Unbeknownst to customers, the results of binary options transactions could be manipulated on the trading platform, for example by changing the strike price of a trade just before expiry.  For at least part of the Relevant Period, Cartu and the Peretz Brothers typically approved requests to alter trading outcomes for customers of the Cartu Brands.

11.      Beginning on or before September 2015, the binary options transactions offered by the Cartu Brands were executed on an internet-based trading platform ("Cartu Platform"). Defendants used the Cartu Platform to offer and execute binary option transactions, including currency pairs and commodities, to track customer information including deposits; generate commission reports for individual brokers; and control at least certain customer transactions.

Unbeknownst to the individuals who traded binary options with the Cartu Brands, the Cartu Platform included functionality to "manage risk" associated with a customer, including by altering the pre-set spread or strike price of a trade and delaying execution of a trade.  It also allowed binary brands to limit a customer's open volume or number of trades, without disclosure to the customer or to limit the brand's maximum daily loss.  Increasing the risk setting allowed the Cartu Brands (and other third-parties brands that used the Cartu Platform) to decrease the number of winning trades, thereby increasing customer losses—and their own profits.

12.     To facilitate the transfer of funds from customers in the United States and elsewhere for illegal, off-exchange binary option transactions, Cartu Brands used a now-defunct payment processor, Greymountain Management Limited ("Greymountain"), which Cartu and others operated.  During the relevant period, Cartu and others acting in coordination with him, and their employees, and agents, acting through Greymountain, processed over $165 million in credit card payments for binary options transactions offered by the Cartu Brands and other brands operated by third parties, including processing over $153 million in credit card payments after August 1, 2015.  In total, between January 2014 and August 2017, MasterCard Incorporated processed $38,334,722 in transactions for Cartu Brands on behalf of U.S. customers.  And between May 2016 and July 2017, Visa, Inc. processed a total of $19,757,074 in transactions for Cartu Brands on behalf of U.S. customers.  During the same period, Mastercard and Visa processed a total of $6,939,151 in chargebacks to U.S. customers related to transactions associated with the Cartu Brands.

**B.      Conclusions of Law**

13.     This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that any

person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

14.    Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because the defendants transacted business in this jurisdiction, and the acts and practices in violation of the Act and Regulations occurred within this District.

15.    Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2023), provide that the "act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person." As set forth above, Cartu undertook conduct in connection with the fraudulent scheme alleged in the Complaint in his role as owner and in control of Blue Moon, including using Blue Moon to enter into contracts, operate the Cartu Platform, and receive and hide ill-gotten gains. Accordingly, pursuant to Section 2(a)(1)(B) and Regulation 1.2, Blue Moon is liable for Cartu's acts in violation of the CEA and Regulations.

**Commodity Options Fraud in Violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.4, 17 C.F.R. § 32.4 (2023)**

16.    By the conduct described in paragraphs 6 through 12 above, Cartu, Leeav Peretz, Nati Peretz, and Blue Moon, in connection with an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction, directly and indirectly cheated and defrauded, or attempted to cheat and defraud, and willfully deceived, or attempted to

deceive, their customers and prospective customers; made or caused to be made to customers and prospective customers false report statements; and deceived or attempted to deceive customers and prospective customers in connection with commodity option transactions by, among other things, knowingly or recklessly disseminating—via websites, emails, telephone calls, and other communications—material misrepresentations to individuals in the United States and elsewhere to deposit funds to trade binary options, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.4, 17 C.F.R. § 32.4 (2023).

**Fraud by Deceptive Device or Contrivance in Violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)–(3), 17 C.F.R. § 180.1(a)(1)–(3) (2023)**

17.    By the conduct described in paragraphs 6 through 12 above, Cartu, Leeav Peretz, Nati Peretz, and Blue Moon intentionally or recklessly used or employed, or attempted to use or employ, manipulative or deceptive devices, schemes, and artifices to defraud; made, or attempted to make, untrue or misleading statements of material facts; omitted to state material facts necessary in order to make statements made not untrue or misleading; and engaged, or attempted to engage, in acts practices, and courses of business, which operated or would operate as a fraud or deceit upon customers or prospective customers, or contrivances in connection with contracts of sale of swaps, intentionally or recklessly, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)–(3), 17 C.F.R. § 180.1(a)(1)–(3) (2023).

**Illegal Off-Exchange Commodity Options Transactions in Violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.2, 17 C.F.R § 32.2 (2023)**

18.    By the conduct described in paragraphs 6 through 12 above, Defendants Cartu, Leeav Peretz, Nati Peretz, and Blue Moon offered to enter into, entered into, confirmed the execution of, maintained positions in, and otherwise conducted activities relating to commodity options transactions in interstate commerce, other than on a registered exchange, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.2, 17 C.F.R. § 32.2 (2023).

19.   Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants Cartu, Leeav Peretz, Nati Peretz, and Blue Moon will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## II.   PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

20.   Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendants Cartu, Leeav Peretz, Nati Peretz, and Blue Moon are permanently restrained, enjoined and prohibited from directly or indirectly:

a.   Engaging in commodity options fraud by cheating or defrauding, or attempting to cheat or defraud, other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for or on behalf of, or with, any other person in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.4, 17 C.F.R. § 32.4 (2023);

b.   Engaging in fraud by deceptive device or contrivance by using or employing, or attempting to use or employ, manipulative devices, schemes, and artifices to defraud; making or attempting to make, untrue or misleading statements of material facts; omitting to state material facts necessary in order to make statements made not untrue or misleading; and engaging or attempting to engage, in acts, practices, and courses of business, including, but not limited to, those specifically allege operated or would operate as a fraud or deceit upon customers or prospective customers, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1, 17 C.F.R. § 180.1(a)–(3) (2023); and

      c.      Engaging in illegal off-exchange commodity options transactions by offering to enter into, entering into, confirming the execution of, maintaining a position in, or otherwise conducting activity related to commodity options, other than on a registered exchange, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.2, 17 C.F.R.§ 32.2 (2023).

21.      Defendants Cartu, Leeav Peretz, Nati Peretz, and Blue Moon are also permanently restrained, enjoined and prohibited from directly or indirectly:

      a.      Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

      b.      Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2023)), for their own personal account or for any account in which they a direct or indirect interest;

      c.      Having any commodity interests traded on their behalf;

      d.      Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

      e.      Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

      f.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2023); and/or

g.    Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R.

§ 3.1(a) (2023)), agent or any other officer or employee of any person (as that

term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or

required to be registered with the Commission except as provided for in 17 C.F.R.

§ 4.14(a)(9).

## III.   RESTITUTION AND CIVIL MONETARY PENALTY

### A.    Restitution

22.    Defendants Cartu, Leeav Peretz, Nati Peretz, and Blue Moon shall pay, jointly

and severally, restitution in the amount of fifty-one million, one hundred fifty-five thousand, six-

hundred forty-five dollars ($51,155,645) ("Restitution Obligation").  If the Restitution

Obligation is not paid immediately, post-judgment interest shall accrue on the Restitution

Obligation beginning on the date of entry of this Order and shall be determined by using the

Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

### Civil Monetary Penalty

23. Defendants Cartu, Leeav Peretz, Nati Peretz, and Blue Moon shall pa  , jointl   and

severally, a civil monetary penalty in the amount of one hundred fifty-three million, four

hundred sixty-six thousand, nine hundred thirty-five dollars ($153,466,935) ("CMP

Obligation").  If the CMP Obligation is not paid immediately, then post-judgment interest shall

accrue on the CMP Obligation beginning on the date of entry of this Order and shall be

determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant

to 28 U.S.C. § 1961.

24.     Defendants shall pay their CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact the Federal Aviation Authority at the address above to receive payment instructions and shall fully comply with those instructions.  Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies the paying Defendant and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street NW, Washington, D.C. 20581.

**C.     Provisions Related to Monetary Sanctions**

24. Partial Satisfaction:  Acceptance by the Commission of payment of the Restitution Obligation or CMP Obligation shall not be deemed a waiver of the obligation to make further payments pursuant to this Order, or a waiver of the Commission right to seek to compel payment of any remaining balance.

**IV.     Miscellaneous Provisions**

25. Notice:  All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

> Robert T. Howell
> Deputy Director, Division of Enforcement
> Commodity Futures Trading Commission
> Ralph H. Metcalf Federal Building
> 77 W. Jackson Blvd., Suite 800
> Chicago, IL 60604

All such notices to the Commission shall reference the name and docket number of this action.

    2  .    Change of Address/Phone:  Until such time as Defendants satisfy in full their Restitution Obligation and CMP Obligation as set forth in this Order, Defendants shall provide written notice to the Commission by certified mail of any change to their telephone numbers and mailing addresses within ten calendar days of the change.

    27.    Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by a defendant to modify or for relief from the terms of this Order.

    2  .    Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defendants, upon any person under the authority or control of any of them, and upon any person who receives actual notice of this Order, by personal service, email, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendant Cartu, Leeav Peretz, Nati Peretz, or Blue Moon.

In their proposed order, (Dkt. 127-3), CFTC includes extensive language regarding the appointment of a monitor for the award of damages. As this stage, the Court finds that CFTC has not sufficiently briefed the need for a Court appointed monitor to enforce the entry of this judgment. Should CFTC request the appointment of a monitor, as set out in their proposed order, the shall file a motion to amend the judgment on or before **April 12, 2024** to that effect, explaining the factual and legal basis for appointing a monitor.

> **IT IS ORDERED** that CFTC's motion, (Dkt. 127), is **GRANTED**.

> The Court will enter final judgment via separate order.

> **SIGNED** on March 10, 2024.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

14